**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**Case No. 0:17-cv-62107-PCH**

| | |
|---|---|
| WELLNEXT LLC, and RAINBOW LIGHT NUTRITIONAL SYSTEMS, LLC, | : |
| | : |
| Plaintiffs, | : |
| v. | : |
| | : |
| OVM LLC, YAKOV MEYER FIGA, and JOHN DOES 1-100, individually or as corporate/business entities, | : |
| | : |
| Defendants. | : |
| | : |
| _____/ | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS**

Plaintiffs Wellnext LLC n/k/a Nutranext, LLC[1]  ("Wellnext") and Rainbow Light

Nutritional Systems, LLC ("Rainbow Light") (collectively, "Plaintiffs") submit this memorandum

in opposition to Defendants OVM LLC and Yakov Meyer Figa's (collectively, "Defendants")

motion to dismiss.  (Doc. 15.)

---

[1] Effective December 14, 2017, Wellnext LLC changed its name to Nutranext, LLC.  For purposes of this brief and consistency with the Complaint, Plaintiffs will continue to refer to the company as Wellnext.

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION……………………………………………………………...1

II.     FACTUAL BACKGROUND……………………………………………………..2

        A.  Rainbow Light Products And The Rainbow Light Trademarks………………….......2
        B.  The Purposes Of The Lanham Act Are To Protect Consumers And A Trademark
            Owner's Goodwill…………………………………………………………………..2
        C.  Online Marketplaces And The Challenges They Present To Plaintiffs' Goodwill……2
        D.  Plaintiffs Have Implemented A Quality Control Program To Combat The Problems
            Presented By The Online Marketplaces and Protect Their Goodwill In Line With
            The Underlying Purposes Of The Lanham Act…………………………………….4
        E.  Defendants Are Not Authorized Resellers of Rainbow Light Products And They
            Are Selling Non-Genuine Products Bearing The Rainbow Light Trademark…………5
        F.  Defendants Are Tortiously Interfering With Wellnext's Agreements………………..6

III.    LAW AND ARGUMENT………………………………………………………...6

        A.  Plaintiffs Have Sufficiently Pled Their Claim For Trademark Infringement………..6
            1.  The First Sale Doctrine Does Not Apply Because The Products Defendants
                Sell Are Not Distributed Under Plaintiffs' Quality Controls…………….……..7
            2.  The First Sale Doctrine Does Not Apply Because The Products Defendants
                Sell Are Materially Different From Genuine Rainbow Light Products..………..11
        B.  Plaintiffs Have Sufficiently Pled Their Claims For False Advertising, And Unfair
            Competition…………………………………………………………………….13
        C.  Plaintiffs Have Sufficiently Pled Their Claims For Trademark Dilution……………13
        D.  Plaintiffs Have Sufficiently Pled Their Claim For Common Law Trademark
            Infringement……………………………………………………………………15
        E.  Plaintiffs Have Sufficiently Pled Their Claim for Violation of the FDUTPA………15
        F.  Plaintiffs Have Sufficiently Pled Their Claim For Tortious Interference…..………16
        G.  Plaintiffs Have Sufficiently Pled Claims Against Mr. Figa…………………………19
        H.  Plaintiffs' Complaint Is Not A Shotgun Pleading…………………………………19
        I.  If The Court Finds That Plaintiffs Have Not Sufficiently Pled Any Of Their
            Claims, They Should Be Granted Leave To Amend Their Complaint……..….……20

IV.     CONCLUSION………………………………………………………………..20

## <u>TABLE OF AUTHORITIES</u>

*Adolph Coors Co. v. A. Genderson & Sons, Inc.*, 486 F. Supp. 131 (D. Colo. 1980)……………8

*ADT LLC v. Vivint, Inc.*, 2017 U.S. Dist. LEXIS 123516 (S.D. Fla. Aug. 3, 2017)…………...16

*Anderson v. Dist. Bd. of Trs. Of Cent. Fla Cmty College*, 77 F.3d 364 (11th Cir. 1996)………..19

*Anthony Distribs. v. Miller Brewing Co.*, 904 F. Supp. 1363 (M.D. Fla. 1995)………………...11

*Bailey v. St. Louis*, 196 So. 3d 375 (Fla. App. 2016)…………………………………………16

*Bank v. Pitt*, 928 F.2d 1108 (11th Cir. 1996)…………………………………………………...20

*Bel Canto Design, Ltd. v. MSS HiFi, Inc.*, 837 F. Supp. 2d 208 (S.D.N.Y. 2011) ………..3,7,9,10

*Brain Pharma, LLC v. Scalini*, 858 F. Supp. 2d 1349 (S.D. Fla. 2012)…………………………11

*Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty. Inc.*, 169 So. 3d 164
(Fla. App. 2015)………………………………………………………………………………16

*Caterpillar, Inc. v. Nationwide Equipment*, 877 F. Supp. 611 (M.D. Fla. 1994)…………………7

*Chiron Recovery Ctr., LLC v. AmeriHealth HMO of N.J., Inc.*, 2017 U.S. Dist. LEXIS
163487 (S.D. Fla. Oct. 3, 2017)…………………………………………………...…15-16

*Democratic Rep. of the Congo v. Air Capital Group, LLC*, 614 F.App'x 460 (11th Cir. 2015)..16

*Dentsply Int'l Inc. v. Dental Brands for Less LLC*, 2016 U.S. Dist. LEXIS 87345
(S.D.N.Y. July 5, 2016)………………………………………………………………………15

*Desmond v. Chi. Boxed Beef Distribs.*, 921 F. Supp. 2d 872 (N.D. Ill. 2013)………………...8,10

*Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185 (11th Cir. 1999)…………………………………17

*El Greco Leather Prods. Co. v. Shoe World, Inc.,* 806 F.2d 392 (2d Cir. 1986)……………7,9,10

*Fender Musical Instruments Corp. v. Unlimited Music Ctr., Inc.*, 1995 U.S. Dist. LEXIS
15746 (D. Conn. Feb. 16, 1995)………………………………………………………………12

*FURminator, Inc. v. Kirk Weaver Enters, Inc.*, 545 F. Supp. 2d 685 (N.D. Ohio 2008)…………7

*Gift of Learning Found., Inc. v. TCG, Inc.*, 329 F.3d 792 (11th Cir. 2003)……………………..15

*Hager v. Venice Hosp., Inc.*, 944 F.Supp. 1530 (M.D. Fla. 1996)………………………………18

*Hand & Nail Harmony, Inc. v. Int'l Nail Co.*, 2015 U.S. Dist. LEXIS 67421
(C.D. Cal. May 22, 2015)……………………………………………………………8,9-10

*Health v. Sun Research v. Sunless, Inc.*, 2014 U.S. Dist. LEXIS 191872
(M.D. Fla. Oct. 14, 2004)……………………………………………………………...14

*Health Mgmt. Assocs., Inc. v. Salyer*, 2015 U.S. Dist. LEXIS 188107
(S.D. Fla. June 4, 2015)……………………………………………………………17,18

*Hydreon Corp. v. JC Bros.*, 2016 U.S. Dist. LEXIS 160545 (D. Minn. Nov. 18, 2016)…………3

*Iaffaldano v. Sun W. Mortg. Co.*, 2017 U.S. Dist. LEXIS 204169 (S.D. Fla. Dec. 11, 2017)…..18

*Iberia Foods Corp v. Romeo*, 150 F.3d 298 (3d Cir. 1998)………………………………………8

*Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614 (9th Cir. 1993)……………………………………2

KMS Restaurant Corp. v. Wendy's Int'l Inc., 194 Fed. Appx. 591 (11th Cir. 2006)……………17

*Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377 (6th Cir. 2006)……...9,10

*Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839 (N.D. Tex. 2009)……………………………..8,10

*Novell v. Bank of Am. Corp.*, 2014 U.S. Dist. LEXIS 180717 (S.D. Fla. Dec. 3, 2014)………...17

*Off Lease Only, Inc. v. LeJeune Auto Wholesale, Inc.*, 187 So. 3d. 868 (Fla. App. 2016)………16

*Parker v. Am. Traffic Solutions, Inc.*, 2015 U.S. Dist. LEXIS 105522
(S.D. Fla. Aug. 10, 2015)……………………………………………………………...16

*Pediatric Nephrology Assocs. of S. Fla. v. Variety Children's Hosp.*, 226 F. Supp. 3d 1346
(S.D. Fla. 2016)……………………………………………………………………...17

*Pelletier v. Zweifel*, 921 F.2d 1465 (11th Cir. 1991)……………………………………………19

*Pepsico, Inc. v. Pac. Produce Ltd.,* 2000 U.S. Dist. LEXIS 12085 (D. Nev. May 4, 2000)…12,13

*Perkins Sch. for the Blind v. Maxi-Aids, Inc.*, 274 F. Supp. 2d 319 (E.D.N.Y. 2003)…………..15

*Philip Morris, Inc. v. Allen Distribs., Inc.*, 48 F. Supp. 2d 844 (S.D. Ind. 1999)……………12,13

*PODS Enters., LLC v. U-Haul Int'l, Inc.*, 126 F.Supp.3d 1263 (M.D. Fla. 2015)………………16

*Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104 (4th Cir. 1991)……………………..7

*SkyVenture Orlando, LLC v. SkyVenture Mgmt., LLC*, 2009 U.S. Dist. LEXIS 77212
(M.D. Fla. Aug. 12, 2009)……………………………………………………………20

Smith v. Beverly Hills Club Apts., LLC, 2016 U.S. Dist. LEXIS 10180 (S.D. Fla.
2016)………...20

*Societe des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633 (1st Cir. 1992)….2,9,10,12

*Sream, Inc. v. Barakat Food, Inc.*, 2017 U.S. Dist. LEXIS 165420 (S.D. Fla. Oct 4, 2017)……16

*Stevens v. Premier Cruises, Inc.*, 215 F.3d 1237 (11th Cir. 2000)…………………………………20

*Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752 (N.D. Ill. 2008)…………………..……...14

*WEC Holdings, LLC v. Juarez*, 2008 U.S. Dist. LEXIS 13841 (D. Nev. Feb. 5, 2008)…..……...14

*Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3 (2d Cir. 1996)……………..…....4,8,9

*Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238 (2d Cir. 2009)…………………………….7,9,10

## MEMORANDUM OF LAW

**I.     INTRODUCTION**

Plaintiffs bring this action because Defendants are engaged in the unauthorized sale of non-genuine Rainbow Light products bearing the Rainbow Light trademark on www.amazon.com ("Amazon").  Defendants' actions infringe on the Rainbow Light trademark and violate the Lanham Act and Florida state law.

Contrary to Defendants' assertions, their actions are not protected by the first sale doctrine. It is settled law, and Defendants themselves concede, that the first sale doctrine does ***not*** apply to the sale of products that are distributed outside of – or interfere with – a manufacturer's quality control procedures or to products that are materially different from genuine goods.  Importantly, the actual quality of the goods at issue is irrelevant.

Here, the Complaint clearly alleges that the products sold by Defendants are not distributed under the specific quality controls established by Plaintiffs – indeed, they interfere with those important quality controls.  (Compl. at ¶¶ 20-27, 34.)  Moreover, the Complaint clearly alleges that Defendants' products are materially different from legitimate Rainbow Light trademarked products.  (*Id.*).  Accordingly, accepting as true the allegations of the Complaint, as must be done at this stage of the litigation, there is, as a matter of law, a presumption of consumer confusion, and Plaintiffs have adequately stated their claims.  Defendants' motion must, therefore, be denied.

## II.     FACTUAL BACKGROUND

### A.  Rainbow Light Products And The Rainbow Light Trademarks.

Plaintiffs develop, manufacture, market, and sell high quality dietary and nutritional supplements under the Rainbow Light® brand.  (Compl. at ¶ 13.)  Rainbow Light products are sold exclusively through a network of authorized resellers ("Authorized Resellers").  (*Id.*)

To promote and protect the Rainbow Light brand, Rainbow Light has registered numerous trademarks with the United States Patent and Trademark Office, including RAINBOW LIGHT® and others (the "Rainbow Light Trademarks").  (*Id.* at ¶ 15.)

### B.  The Purposes Of The Lanham Act Are To Protect Consumers And A Trademark Owner's Goodwill.

Two general principles underlie the Lanham Act.  The first is protecting consumers from confusion.  *See Societe des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 636 (1st Cir. 1992) (the Lanham Act focuses on protecting consumers from confusion because "[e]very product is composed of a bundle of special characteristics," and the consumer, in purchasing that product, "expects to receive those special characteristics on every occasion"); *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 619 (9th Cir. 1993) (*citing Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992)) (purpose of trademark protection is to ensure that the public "will get the product which it asks for and wants to get"). The second principle is protecting a trademark owner's goodwill. *Nestle, S.A.*, 982 F.2d at 636 (the Lanham Act seeks to protect the trademark owner's goodwill and his "ability to shape the contours of his reputation").

### C.  Online Marketplaces And The Challenges They Present To Plaintiffs' Goodwill.

E-commerce retail sales – particularly online marketplace sales – have exploded over the past decade.  In 2016 alone, United States consumers spent $147.0 billion in e-commerce sales on Amazon – a 31.3% increase from 2015.

2

While the online marketplaces have created a great deal of opportunity, they also threaten a manufacturer's ability control the quality and safety of its products.  The marketplaces allow third-party sellers to sell products anonymously, without informing consumers who they are or how they obtained their products.  *See Hydreon Corp. v. JC Bros.*, 2016 U.S. Dist. LEXIS 160545, at *22 (D. Minn. Nov. 18, 2016) (noting the unwillingness of the marketplaces to disclose the names of the actual sellers of the infringing products.).  As such, any person who is able to divert a manufacturer's products can offer them for sale on the online marketplaces without having to reveal their identity to the consuming public.  It is common for these diverters to sell diverted products well past their expiration date or to mix in fake or diluted products with shipments.  *See id.* ("Counterfeiting is a rampant problem as indicated by a recent article by Business Insider entitled *Amazon is Cracking Down on Counterfeit Goods.*").  Because these diverters operate anonymously, a manufacturer has no ability to exercise control over the products they sell or insure that the products are safe.  The manufacturer's inability to exercise control over the quality of these products presents serious risks to the health and safety of consumers – particularly where, as here, the product is ingested by the consumer.

The online marketplaces also threaten a manufacturer's ability to maintain its goodwill, reputation, and brand integrity.  When a customer purchases a product on a marketplaces and receives a damaged, defective, expired, or poor quality product it is much more likely to associate this bad experience with the ***brand/manufacturer***, not the anonymous seller.  *See Bel Canto Design, Ltd. v. MSS HiFi, Inc.*, 837 F. Supp. 2d 208, 215 (S.D.N.Y. 2011) ("If a customer has a bad experience with a dealer, the consumer does not necessarily differentiate between the manufacturer and the dealer.").  The online marketplaces give disgruntled customers a powerful and convenient forum to air their grievances – product reviews.  Any consumer who is dissatisfied

with a product he/she receives can post a review on the marketplace for all other consumers to see. Most often, these reviews will disparage the *brand/manufacturer*, not the seller. *See id.* These product reviews have significant impact on a brand's reputation, as consumers place extraordinary trust in these online reviews and are more likely to trust them than even the product descriptions written by manufacturers. Because of the reliance consumers place on online reviews, negative online marketplace reviews can be the death knell for a manufacturer's online product listings. *See also Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3, 8 (2d Cir. 1996) (recognizing that a concentration of poor quality reviews can do damage to the value of a trademark).

### D. Plaintiffs Have Implemented A Quality Control Program To Combat The Problems Presented By The Online Marketplaces and Protect Their Goodwill In Line With The Underlying Purposes Of The Lanham Act.

Recognizing the risks to consumers and the significant reputational concerns associated with the illegal sale of Rainbow Light products by anonymous unauthorized sellers like Defendants, Plaintiffs have implemented a quality control program (that applies to both brick and mortar retailers and online sellers) with the twin aims of protecting consumers and protecting the goodwill associated with the Rainbow Light brand. (Compl. at ¶¶ 20-28.) The goal of this program is to ensure that consumers who buy Rainbow Light products online receive products that feature all of the special characteristics that consumers have come to expect from products sold under the Rainbow Light name – in particular, safety and quality. (*Id.* at ¶¶ 14, 20, 28.) The program seeks to minimize the likelihood that poor quality products will reach consumers, which minimizes harm to the brand's goodwill caused by negative product reviews. (*Id.*)

The quality control standards Plaintiffs have implemented include:

1. Allowing sales only through Authorized Resellers and not permitting online anonymous sales. (Compl. at ¶¶ 13-14, 27.)

2. Prohibiting Authorized Resellers from selling products to those who intend to resell the products and prohibiting distributors from selling products to anyone who is not an Authorized Reseller.  (*Id*. at ¶ 27.)

3. Requiring Authorized Resellers to store Rainbow Light products pursuant to specific terms, including in a cool, dry place, away from direct sunlight, extreme heat, and dampness, and in accordance with cGMPs, applicable laws, rules and regulations, and any additional storage guidelines specified by Wellnext.  (*Id*. at ¶ 23.)

4. Requiring Authorized Resellers to inspect Rainbow Light products upon receipt and during storage for damage, defect, evidence of tampering, or other non-conformance, and to confirm that product seals have not been broken, and to regularly inspect inventory for expired or soon-to-be expired Rainbow Light products and remove any such products from inventory. (*Id*.)

5. Prohibiting Authorized Resellers from selling expired Rainbow Light products.  (*Id*.)

6. Prohibiting Authorized Resellers from relabeling, altering, modifying, tampering with, or repackaging any products, product labels, packaging, or literature.  (*Id*.)

7. Requiring Authorized Resellers to communicate all safety information to consumers and cooperate with Wellnext with respect to any product recall.  (*Id*. at ¶ 25.)

8. Requiring Authorized Resellers to familiarize themselves with the special features of all products kept in inventory and to be able to advise clients on how to use the products safely and properly and address end-user customer questions and concerns both before and after the sale of the products.  (*Id.* at ¶ 26.)

9. Requiring Authorized Resellers to respond promptly to customer inquiries so that customers receive the information they seek.  (*Id*.)

These quality controls are legitimate and non-pretextual, particularly given the nature of the products at issue and the realities of online marketplaces.  (*Id.* at ¶ 20.)  When it comes to products that are ingested, applied to the body, or contain substances that can cause bodily harm if adulterated, these quality controls are fundamentally important.

### E. Defendants Are Not Authorized Resellers of Rainbow Light Products And They Are Selling Non-Genuine Products Bearing The Rainbow Light Trademark.

Defendants are not Authorized Resellers of Rainbow Light products.  (*Id*. at ¶ 31.) Defendants, however, have sold, and continue to sell, products bearing the Rainbow Light

Trademarks anonymously on Amazon under the storefront names "GoGreen 2017 LLC," "Hashem Yazor," and "Ocean View Marketing." (*Id*. at ¶¶ 29, 32.)

The products Defendants sell do not adhere to Plaintiffs' quality controls and are not genuine products. (*Id*. at ¶ 34.) Further, Defendants' sale of products online interferes with Plaintiffs' efforts to exercise control over the quality of products being sold under the Rainbow Light brand. Defendants sell their products anonymously under a fictitious name without any information regarding who they are or where they obtained the products they sell. (*Id*. at ¶ 29; https://www.amazon.com/sp?_encoding=UTF8&asin=&isAmazonFulfilled=1&isCBA=&market placeID=ATVPDKIKX0DER&orderID=&seller=A1QPJG21HT7L4H&tab=&vasStoreID=.) As such, Plaintiffs are unable to impose their quality controls over the products Defendants sell.[2]

### F. Defendants Are Tortiously Interfering With Wellnext's Agreements.

Wellnext has agreements with its distributors that prohibit them from selling products to parties who are not Authorized Resellers. (*Id.* at ¶¶ 27, 126.) Defendants knew of this prohibition by at least September 18, 2017, through the cease and desist letter Plaintiffs sent them. (*Id*. at ¶¶ 33, 38, 127.) Despite this knowledge, Defendants induced Wellnext's distributors to breach their agreements and sell products to Defendants who are unauthorized diverters. (*Id*. at ¶¶ 39, 128-29.)

## III.   LAW AND ARGUMENT

### A. Plaintiffs Have Sufficiently Pled Their Claim For Trademark Infringement.

Defendants have caused customer confusion and interfered with Plaintiffs' ability to protect their goodwill. Under established law, Defendants are liable for trademark infringement.

---

[2] Plaintiffs had to spend significant time investigating Defendants just to uncover who they were, and when Plaintiffs attempted to contact Defendants, Defendants refused to respond. (*Id*. at ¶ 33; Doc. 11 at 3-4.) Indeed, Plaintiffs had file this lawsuit just to get confirmation that Defendants were, in fact, behind the storefront. (*Id*.)

**1.  The First Sale Doctrine Does Not Apply Because The Products Defendants Sell Are Not Distributed Under Plaintiffs' Quality Controls.**

As Defendants point out, sellers that do nothing more than stock and resell genuine products are generally protected from claims of trademark infringement by the first sale doctrine. *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 107 (4th Cir. 1991).  As Defendants concede, however, there are exceptions to the first sale doctrine that allow trademark owners to assert Lanham Act claims against unauthorized sellers.  (Doc. 15 at 10.)

Courts have repeatedly held that a product is not truly "genuine" unless it is manufactured and distributed under quality controls established by the manufacturer.  *El Greco Leather Prods. Co. v. Shoe World*, *Inc.,* 806 F.2d 392, 395 (2d Cir. 1986); *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243 (2d Cir. 2009) ("goods are not genuine if they do not conform to the trademark holder's quality control standards"); *Shell Oil*, 928 F.2d at 107 (4th Cir. 1991) ("A product is not truly 'genuine' unless it is manufactured and distributed under quality controls established by the manufacturer."); *Bel Canto*, 837 F. Supp. 2d at 229 ("[u]nauthorized resales of trademarked goods that interfere with the mark holder's ability to exercise quality control are, like resales of materially different goods, outside the protection of the first sale doctrine.").  Indeed, a trademark owner's ability to control the quality of the goods sold under the trademark is essential to avoiding customer confusion.  *See FURminator, Inc. v. Kirk Weaver Enters, Inc.*, 545 F. Supp. 2d 685, 689 (N.D. Ohio 2008) ("A trademark signifies that goods sold under it are of equal quality. A trademark holder is able to control the quality of the goods and a trademark acts as an indicator of consistent quality."); *Caterpillar, Inc. v. Nationwide Equipment*, 877 F. Supp. 611, 616 (M.D. Fla. 1994) ("Variance in quality control creates a presumption of customer confusion as a matter of law.").  Distribution of goods that do not meet a trademark owner's quality control standards can erode a trademark's value, giving rise to a claim of infringement.  *See Warner-Lambert*, 86 F.3d at 4

7

("Distribution of a product that does not meet the trademark holder's quality control standards may result in devaluation of the mark by tarnishing its image. If so, the non-conforming product is deemed for Lanham Act purposes not to be a genuine product of the holder, and its distribution constitutes trademark infringement.").

To establish a claim for trademark infringement based on failure to follow quality control standards:

> [A] trademark holder is not required to adopt the most stringent quality control procedures available.  The trademark holder must demonstrate only that: (i) it has established, legitimate, substantial, and nonprextual quality control procedures, (ii) it abides by these procedures, and (iii) the nonconforming sales will diminish the value of the mark.

*Warner-Lambert*, 86 F.3d at 6.  *See also Iberia Foods Corp v. Romeo*, 150 F.3d 298, 304 (3d Cir. 1998) (adopting *Warner-Lambert* test and explaining that "the test is whether the quality control procedures established by the trademark owner are likely to result in differences between the products such that consumer confusion regarding the sponsorship of the products could injure the trademark owner's goodwill"); *Hand & Nail Harmony, Inc. v. Int'l Nail Co.*, 2015 U.S. Dist. LEXIS 67421, at *28-29 (C.D. Cal. May 22, 2015) (granting preliminary injunction on basis of *Warner-Lambert*); *Desmond v. Chi. Boxed Beef Distribs.*, 921 F. Supp. 2d 872, 881 (N.D. Ill. 2013) (denying motion to dismiss because of quality control doctrine in *Warner-Lambert*);  *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 853-54 (N.D. Tex. 2009) (finding *Warner-Lambert*'s test "persuasive" and applying it to deny summary judgment on defendants' affirmative defense of the first sale doctrine); *Adolph Coors Co. v. A. Genderson & Sons, Inc.*, 486 F. Supp. 131, 135-36 (D. Colo. 1980) (enjoining defendant from reselling Coors beer because defendant was not following Coors' quality controls).

Importantly, the actual quality of the goods sold by an unauthorized seller is not material. Instead, the analysis turns on whether the seller has *interfered* with a trademark owner's legitimate quality controls. *Zino Davidoff*, 571 F.3d at 243 ("Where the alleged infringer has interfered with the trademark holder's ability to control quality, the trademark holder's claim is not defeated because of failure to show that the goods sold were defective. That is because the interference with the trademark holder's legitimate steps to control quality unreasonably subjects the trademark holder to the risk of injury to the reputation of its mark."); *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 382 (6th Cir. 2006) (the "harm" in quality control cases "stems not from the actual quality of the goods (which is legally irrelevant) but rather from [the plaintiff's] loss of control over the quality of goods that bear its marks"); *Nestle*, 982 F.2d at 643 ("Regardless of the offending goods' actual quality, courts have issued Lanham Act injunctions solely because of the trademark owner's inability to *control* the quality of the goods bearing its name."); *El Greco*, 806 F.2d at 395 ("[T]he actual quality of the goods is irrelevant; it is control of quality that a trademark holder is entitled to maintain."); *Bel Canto*, 837 F. Supp. 2d at 229-30 ("[I]f an unauthorized dealer defends an infringement suit by claiming that it has done no more than stock and resell genuine articles bearing the plaintiff's trademark, so that no possibility of confusion exists, the mark holder can overcome that defense by showing that the resale deprives the mark holder of an opportunity to exercise quality control.").

Here, Plaintiffs have implemented a quality control program to protect consumers and the goodwill associated with the Rainbow Light brand.  (Compl. at ¶¶ 20-27.)  The quality control standards Plaintiffs have implemented are legitimate and non-pretextual, as they have been implemented so that Plaintiffs can control the quality of goods manufactured and sold under the Rainbow Light trademark.  *See Warner-Lambert*, 86 F.2d at 7; *Hand & Nail*, 2015 U.S. Dist.

LEXIS 67421, at *28-30; *Mary Kay*, 601 F.Supp.2d at 853.  Defendants do not contest the legitimacy of Plaintiffs' quality controls other than to assert that Plaintiffs do not allege what quality control standards apply to online sellers.  (Doc. 15 at 12.)  Plaintiffs' quality controls, however, apply to all Authorized Resellers, including those who sell products online.  (Compl. at ¶ 22.)  Thus, Defendants argument is easily dismissed.

Plaintiffs also abide by their procedures.  (*See* Compl. at ¶¶ 14, 20-28.)  Indeed, Defendants do not dispute this point.  (*See* Doc. 15 at 9-12.)

Last, the products Defendants offer for sale do not adhere to Plaintiffs' quality control standards and diminish the value of the Rainbow Light Trademarks.  (Compl. at ¶¶ 34.)  Defendants' argument in opposition is limited to their contention that Plaintiffs have not specifically alleged how Defendants failed to comply with Plaintiffs' quality control requirements.  (Doc. 15 at 11.)  This argument reflects Defendants' fundamental misunderstanding of the controlling law.  Plaintiffs do ***not*** need to show that the products Defendants sold were defective; it is enough that Defendants have interfered with Plaintiffs' ability to exercise control over the products bearing the Rainbow Light mark.  *See Zino Davidoff*, 571 F.3d at 243; *Lorillard Tobacco*, 453 F.3d at 382; *Nestle*, 982 F.2d at  642; *El Greco*, 806 F.2d at 395; *Bel Canto*, 837 F.Supp.2d at 229-30.  By selling products anonymously outside of Plaintiffs' authorized channels, Defendants have interfered with Plaintiffs' ability to control the quality of the products under the Rainbow Light name (indeed, it was exceedingly difficult and costly to even ascertain Defendants' true identities).  As such, Plaintiffs have sufficiently stated a trademark infringement claim.  *See Desmond*, 921 F.Supp.2d at 881 (denying motion to dismiss where plaintiff alleged it did not have control over the quality of the products sold by defendant).

Further, Defendants' argument fails because Plaintiffs have sufficiently alleged that the products Defendants sell do not adhere to Plaintiffs' quality controls – allegations which must be accepted as true.  Plaintiffs have alleged that Rainbow Light products are subject to several legitimate, non-pretextual quality controls.  (Doc. 15 at 10; Compl. at ¶¶ 20-27; *supra* Section II.B.)  Plaintiffs have alleged that Defendants do not adhere to these quality control standards. (Doc. 15 at 7; Compl. at ¶¶ 34, 52.)  Thus, Plaintiffs have sufficiently alleged that Defendants are selling products that do not comply with Plaintiffs' quality controls.  *See Anthony Distribs. v. Miller Brewing Co.*, 904 F. Supp. 1363, 1367 (M.D. Fla. 1995) (denying motion to dismiss where plaintiff alleged defendant distributed products that violated its quality control standards).

Plaintiffs' reliance on *Brain Pharma, LLC v. Scalini*, 858 F. Supp. 2d 1349, 1353 (S.D. Fla. 2012) is misplaced.  In that case, plaintiff alleged only that defendants were selling non-genuine products that did not comply with comply with plaintiff's quality control measures.  *Id.* at 1352.  Plaintiff, however, *did not allege what its quality control measures* were.  *Id.* at 1355.  As such, the court was unable to assess whether plaintiff had implemented legitimate quality controls that would support a trademark claim.  *Id.*  Here, Plaintiffs have identified the quality control requirements their Authorized Resellers are required to follow.  (Compl. at ¶¶ 20-27.)  Further, they have alleged that Defendants failed to comply with these quality control standards.  (*Id.* at ¶ 34.)  Thus, Plaintiffs' Complaint does not suffer from the same deficiency that the Court found in *Brain Pharma*.  Further, Defendants' interference with Plaintiffs' ability to exercise control over the products sold gives rise to an independent claim for trademark infringement.

### 2.   The First Sale Doctrine Does Not Apply Because The Products Defendants Sell Are Materially Different From Genuine Rainbow Light Products.

A product is also not "genuine" if it is "materially different" from a product sold with the consent of the trademark holder—meaning the product lacks a characteristic that is associated with

genuine products.  *Nestle*, 982 F.2d at 641 (material differences "endanger a manufacturer's investment in product goodwill and unduly subject consumers to potential confusion by severing the tie between a manufacturer['s] protected mark and its associated bundle of traits").  These characteristics can include intangible benefits, such as a warranty or service accompanying the product that a consumer would expect to receive with a product sold under a particular trademark.  *See Fender Musical Instruments Corp. v. Unlimited Music Ctr., Inc.*, 1995 U.S. Dist. LEXIS 15746, at *10 (D. Conn. Feb. 16, 1995) (consumers would likely be confused that products that retained Fender's trademarks did not come with the services and guarantees that usually accompany such a sale).  Importantly, the threshold of materiality is "low" and is satisfied by any difference "that consumers would likely consider to be relevant when purchasing a product." *Nestle*, 982 F.2d at 641.

Following this principle, courts have repeatedly held that products sold and distributed by defendants are materially different if they are not subject to the trademark owner's quality control program.  *See, e.g.*, *Philip Morris, Inc. v. Allen Distribs., Inc.*, 48 F. Supp. 2d 844, 853 (S.D. Ind. 1999) (enjoining defendants where products sold by defendants were not subject to the brand's quality control program); *Pepsico, Inc. v. Pac. Produce Ltd.,* 2000 U.S. Dist. LEXIS 12085, at *4 (D. Nev. May 4, 2000) (enjoining defendants where sales did "not permit PepsiCo to properly and sufficiently exercise quality control").

Here, consumers would certainly consider it relevant in making their purchase decisions that Plaintiffs' authorized products are subject to the quality control standards Plaintiffs have implemented, and that the unauthorized products that Defendants sell are not.  It is without question that product quality is a significant concern for consumers purchasing online.  Plaintiffs' Authorized Resellers are vetted by Plaintiffs, subject to Plaintiffs' quality control criteria, and

subject to monitoring, auditing, and being cut off in the event of violations.  (Compl. at ¶¶ 20-27.)

Defendants are not.  (*Id*. at ¶ 34.)  These differences could not be more material in the online

market, particularly because consumers are not aware and not informed that the products they

purchase from unauthorized sellers are not subject to these quality controls.  These facts result in

undeniable consumer confusion and a claim for trademark infringement.  *See Philip Morris*, 48 F.

Supp. 2d at 853; *Pepsico*, 2000 U.S. Dist. LEXIS 12085, at *4.

### B.  Plaintiffs Have Sufficiently Pled Their Claims For False Advertising, And Unfair Competition.

For the same reasons discussed above, Plaintiffs have sufficiently pled their false

advertising and unfair competition claims.  Defendants are using the Rainbow Light Trademarks

to market and sell products that are not genuine Rainbow Light products.  (Compl. at ¶¶ 34, 62-

65, 75-76.)  Thus, as explained above, the first sale doctrine does not apply.

Defendants also concede that customers are likely to be confused by Defendants' sale of

products bearing the Rainbow Light mark because, as they contend, the products they sell "are

indistinguishable from a customer's perspective." (Doc. 15 at 7.)  Thus, a customer who purchases

products from Defendants would likely think that the products are genuine Rainbow Light products

that adhere to Plaintiffs' quality controls when, in fact, they do not.  (Compl. at ¶¶ 51-52, 64-65,

76.)  This fact alone creates a presumption of customer confusion.  *See Philip Morris*, 48 F. Supp.

2d at 853; *Pepsico*, 2000 U.S. Dist. LEXIS 12085, at *4.

### C.  Plaintiffs Have Sufficiently Pled Their Claims For Trademark Dilution.

Plaintiffs have sufficiently alleged a dilution by tarnishment claim against Defendants –

namely that Defendants are selling inferior products that do not adhere to Plaintiffs' quality

controls and that dilute the value of the Rainbow Light Trademarks. As Defendants acknowledge,

Plaintiffs have alleged several facts – which must be accepted as true – in support of their allegation that the Rainbow Light Trademarks are famous, including:

1. The Rainbow Light Trademarks are distinctive and widely recognized marks by the consuming public;
2. Plaintiffs have expended substantial time, money, and resources advertising and promoting the Rainbow Light Trademarks;
3. The Rainbow Light Trademarks are the means by which Rainbow Light products are distinguished from others in the marketplace;
4. The Rainbow Light Trademarks have acquired a secondary meaning by consumers as a result of Plaintiffs' long, continuous, and exclusive use of the marks; and
5. The Rainbow Light Trademarks have considerable value due to the superior quality and exclusive distribution of Rainbow Light products.

(Compl. at ¶¶ 19, 87-90.)  To the extent the Court requires additional information regarding the recognition of the Rainbow Light mark, Plaintiffs refer the Court to the Rainbow Light website, which provides that the Rainbow Light name originated in 1981, Plaintiffs have been creating natural, food-based supplements under the Rainbow Light brand for over 30 years, and that "Rainbow Light is synonymous with natural health and nutrition" and has the "reputation as the #1 Most Trusted Natural Vitamin Brand."  https://www.rainbowlight.com/the-company/.  Such facts are more than sufficient to establish that the Rainbow Light Trademarks are famous.  *See Health v. Sun Research v. Sunless, Inc.*, 2014 U.S. Dist. LEXIS 191872, *10-11 (M.D. Fla. Oct. 14, 2004); *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 773 (N.D. Ill. 2008); *WEC Holdings, LLC v. Juarez*, 2008 U.S. Dist. LEXIS 13841, *13-14 (D. Nev. Feb. 5, 2008).

Defendants' use of the Rainbow Light Trademarks also occurred after they became famous. As stated above, Plaintiffs' have been using the Rainbow Light brand name for over 30 years and it earned the reputation as the #1 Most Trusted Natural Vitamin Brand in 2014. https://www.rainbowlight.com/the-company/.  Defendants did not begin using the Rainbow Light Trademark until 2017 – well after it became famous.  (*See* Compl. at ¶ 33.)

Finally, Plaintiffs have alleged sufficient facts to support a claim for dilution by tarnishment. Defendants are selling products that do not adhere to Plaintiffs' quality controls, which creates the risk that the public will associate the lack of quality of the products sold by Defendants with the Rainbow Light name. (Compl. at ¶¶ 20-27, 34, 52.) These allegations adequately allege a dilution by tarnishment claim. *Dentsply Int'l Inc. v. Dental Brands for Less LLC*, 2016 U.S. Dist. LEXIS 87345, at *11 (S.D.N.Y. July 5, 2016) ("allegations that Defendant is selling *inferior* products under [the plaintiff's] marks sufficiently alleges tarnishment); *Perkins Sch. for the Blind v. Maxi-Aids, Inc.*, 274 F. Supp. 2d 319, 326 (E.D.N.Y. 2003) (denying defendant's motion to dismiss and finding "[i]t is well-established that tarnishment is not limited to seamy conduct. Tarnishment can occur where the reputation of the trademark is harmed and its value reduced because the public will associate the lack of quality or prestige in the defendant's goods with the plaintiff's unrelated goods….").

### D. Plaintiffs Have Sufficiently Pled Their Claim For Common Law Trademark Infringement.

Defendants' sole argument regarding Plaintiffs' common law trademark infringement claim is that it fails for the same reasons as their federal trademark claims. (Doc. 15 at 15-16.) For the reasons set forth above, Plaintiffs have sufficiently pled their federal trademark claims. Thus, Plaintiffs have also sufficiently pled their state law claim for common law trademark infringement. *See Gift of Learning Found., Inc. v. TCG, Inc.*, 329 F.3d 792, 801 (11th Cir. 2003) ("[The analysis of] Florida statutory and common law claims for trademark infringement and unfair competition is the same as under the federal trademark infringement claim[.]").

### E. Plaintiffs Have Sufficiently Pled Their Claim for Violation of the FDUTPA.

The Southern District of Florida recently held that non-consumers have standing under the FDUTPA. *Chiron Recovery Ctr., LLC v. AmeriHealth HMO of N.J., Inc.*, 2017 U.S. Dist. LEXIS

163487, at *16 (S.D. Fla. Oct. 3, 2017).  In fact, the court explained that it was required to follow the rulings of the Florida appellate courts that had made this finding.  *See Bailey v. St. Louis*, 196 So. 3d 375, 383 (Fla. App. 2016) (competitors can bring a claim for damages under the FDUTPA); *Off Lease Only, Inc. v. LeJeune Auto Wholesale, Inc.*, 187 So. 3d. 868, 869 n.2 (Fla. App. 2016) (the FDUTPA "no longer requires one to be a 'consumer' to maintain an action for damages"); *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty. Inc.*, 169 So. 3d 164, 169 (Fla. App. 2015) (both consumers and "other entities" can bring a claim under the FDUTPA). Several other courts have reached the same conclusion.  *Democratic Rep. of the Congo v. Air Capital Group, LLC*, 614 F.App'x 460, 468 (11th Cir. 2015) (rejecting "restrictive reading" of the Act and explaining that the Act was amended in 2001 to ensure that businesses received protections); *ADT LLC v. Vivint, Inc.*, 2017 U.S. Dist. LEXIS 123516, *11-12 (S.D. Fla. Aug. 3, 2017) (denying motion to dismiss and holding non-consumer could state a claim under the FDUTPA); *Parker v. Am. Traffic Solutions, Inc.*, 2015 U.S. Dist. LEXIS 105522, *18-21 (S.D. Fla. Aug. 10, 2015) (person does not have to be a "consumer" to bring a FDUTPA claim); *Sream, Inc. v. Barakat Food, Inc.*, 2017 U.S. Dist. LEXIS 165420, at *6 (S.D. Fla. Oct 4, 2017) (granting judgment on FDUTPA claim against competitor and holding that "[t]rademark infringement is an unfair and deceptive act that constitutes a FDUPTA violation"); *PODS Enters., LLC v. U-Haul Int'l, Inc.*, 126 F.Supp.3d 1263, 1285 (M.D. Fla. 2015) (affirming jury verdict on FDUTPA claim arising out of defendant's trademark infringement). Thus, contrary to Defendants' contention, Plaintiffs have standing to bring their FDUTPA claim.

### F.  Plaintiffs Have Sufficiently Pled Their Claim For Tortious Interference.

Plaintiffs have also sufficiently pled their claim for tortious interference.  Plaintiffs allege that Wellnext has agreements with its distributors that prohibit them from selling products to

parties who are not Authorized Resellers, Defendants knew of those agreements, and Defendants interfered with those agreements by inducing Wellnext's distributors to breach their agreements and sell products to Defendants.  (Compl. at ¶¶ 37-39, 125-30.)  These allegations, which must be accepted as true, unquestionably state a tortious interference claim.  *See Health Mgmt. Assocs., Inc. v. Salyer*, 2015 U.S. Dist. LEXIS 188107, at *7 (S.D. Fla. June 4, 2015).

In regard to the first element,[3] Plaintiffs are merely required to allege a relationship with an identifiable party and not "just a relationship with the general business community." *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1191 (11th Cir. 1999).  Here, Plaintiffs have alleged that they have agreements with an identifiable group of parties – their distributors.  (Compl. at ¶¶ 37, 126.)  Thus, Plaintiffs have adequately pled the first element.  *See* Pediatric Nephrology Assocs. of S. Fla. v. Variety Children's Hosp., 226 F. Supp. 3d 1346, 1357-58 (S.D. Fla. 2016) (denying motion to dismiss and rejecting argument that plaintiffs had to identify  the persons with whom defendants interfered); *Novell v. Bank of Am. Corp.*, 2014 U.S. Dist. LEXIS 180717, at *17-18 (S.D. Fla. Dec. 3, 2014) (denying motion to dismiss where plaintiff alleged defendants' interfered with its relationship with its mortgagor but did not identify the specific mortgagor).

In regard to the second element, Plaintiffs have alleged that Defendants had knowledge of Wellnext's agreements with its distributors and the prohibition against selling to parties who are not Authorized Resellers.  (Compl. at ¶¶ 38, 127.)  At a minimum, Defendants were put on notice of these relationships when Plaintiffs sent them the cease and desist letter on September 18, 2017, which provided Defendants notice of these facts.  (*Id*. at ¶ 33.)  This element has therefore been

---

[3] As Defendants point out, the elements of a tortious interference claim include: (1) the existence of a business relationship or contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach. KMS Restaurant Corp. v. Wendy's Int'l Inc., 194 Fed. Appx. 591, 603 (11th Cir. 2006).

adequately pled.  *See* Health Mgmt. Assocs., 2015 U.S. Dist. LEXIS 188107, at *7-8 (allegation that defendant knew of restrictive covenants in contract was sufficient to state plausible claim).

As for the third element, Plaintiffs are merely required to allege direct interference with their business relationship.  *Iaffaldano v. Sun W. Mortg. Co.*, 2017 U.S. Dist. LEXIS 204169, at *12 (S.D. Fla. Dec. 11, 2017); *Hager v. Venice Hosp., Inc.*, 944 F.Supp. 1530, 1535 (M.D. Fla. 1996).  Here, Plaintiffs have alleged that Defendants willfully and knowingly interfered with Wellnext's agreements with its distributors and did so with the wrongful purpose of inducing them to breach their agreements so that Defendants could acquire products to sell on the internet.  (*Id.* at ¶ 39, 128-129.)  Such allegations satisfy the third element of Plaintiffs' tortious interference claim.  *See Iaffaldano*, 2017 U.S. Dist. LEXIS 204169, at *12 (denying motion to dismiss where plaintiff alleged direct interference with her business relationship).

Defendants' arguments regarding the fourth element are also without merit.  Defendants' contention that Plaintiffs cannot state a claim because they profited from Defendants' actions is wrong.  Plaintiffs allege – which must be accepted as true – that they have been damaged by Defendants' acquisition and sale of products because such sales have harmed their reputation, goodwill, business and customer relationships, intellectual property rights and brand integrity. (Compl. at ¶ 40-41, 130.)  There is no allegation that Plaintiffs' profited from Defendants' actions. Defendants' suggestion that Plaintiffs must prove "actual harm" at the pleading stage is also incorrect.  The *Realauction* case Defendants rely on was decided on a post-verdict motion.  Here, Defendants have alleged that they have been damaged – which is sufficient to survive a motion to dismiss. *See Health Mgmt. Assocs.*, 2015 U.S. Dist. LEXIS 188107, at *7.  Last, the *Gwynn* case Defendants cite dismissed plaintiff's claim because it failed to allege an identifiable business relationship.  Here, Plaintiffs have alleged interference with an identifiable party.

### G.  Plaintiffs Have Sufficiently Pled Claims Against Mr. Figa.

Plaintiffs have sufficiently alleged their claims against Mr. Figa.  Plaintiffs allege that Mr. Figa operates the "GoGreen 2017 LLC" storefront on Amazon, (Compl. at ¶ 4), and that, as the operator of this storefront, he has unlawfully acquired products from Wellnext's distributors and unlawfully sold products bearing the Rainbow Light Trademarks on Amazon.  (*See id*.)  For the reasons stated above, these allegations state a claim against Mr. Figa.

Defendants incorrectly argue that Mr. Figa has been named only as a corporate officer of OVM.  Plaintiffs have pled claims against Mr. Figa in his personal capacity as the operator of the storefront.  (*Id.* at ¶ 4.)  Plaintiffs sent Mr. Figa several notices stating that they had identified him as the operator of this storefront and he never denied these allegations.  (*Id*. at ¶ 33; Doc. 11 at 3-4.)  Thus, Plaintiffs have more than a good faith basis for alleging that Mr. Figa operates the storefront and asserting claims against him in his personal capacity.

### H.  Plaintiffs' Complaint Is Not A Shotgun Pleading.

Plaintiffs' Complaint is not a shotgun pleading.  The essence of a shotgun pleading is that it is complete with "rambling recitations" and "factual allegations that could not possibly be material" that force the "district court [to] sift through the facts presented and decide for [itself[ which were material to the particular cause of action asserted."  *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991).  *See also Anderson v. Dist. Bd. of Trs. Of Cent. Fla Cmty College*, 77 F.3d 364, 366 (11th Cir. 1996) (shotgun pleading is one where "it is virtually impossible to know which allegations of fact are intended to support which claim.").

Here, the factual allegations and legal counts of the Complaint are organized, defined, and coherent.  Plaintiffs provide the Court and Defendants notice of the nature of their claims and the facts applicable to each.  Defendants' motion to dismiss demonstrates that they are well aware of

the nature of Plaintiffs' claims and allegations.  The Complaint is not a shotgun pleading.  *See* Smith v. Beverly Hills Club Apts., LLC, 2016 U.S. Dist. LEXIS 10180 at *11-12 (S.D. Fla. 2016) (rejecting argument that complaint was a shotgun pleading).[4]

**I.   If The Court Finds That Plaintiffs Have Not Sufficiently Pled Any Of Their Claims, They Should Be Granted Leave To Amend Their Complaint.**

The Eleventh Circuit has held that before a district court dismisses a complaint with prejudice because of a mere pleading defect, it ordinarily must give a plaintiff an opportunity to amend the complaint and cure the pleading defect.  *Stevens v. Premier Cruises, Inc.*, 215 F.3d 1237, 1239 (11th Cir. 2000); *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1996) ("Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.").

Here, if the Court finds that Plaintiffs have failed to sufficiently plead any of their claims, Plaintiffs should be granted leave to amend their complaint to correct any defects.  Indeed, the very cases Defendants rely on dismissed the claims without prejudice and gave plaintiffs the opportunity to re-plead.  *See Brain Pharma*, 858 F. Supp. 2d at 1353) (granting plaintiff leave to re-plead its trademark claims); *SkyVenture Orlando, LLC v. SkyVenture Mgmt., LLC*, 2009 U.S. Dist. LEXIS 77212, at *24 (M.D. Fla. Aug. 12, 2009) (granting plaintiff leave to re-plead its tortious interference claim).

**IV.   CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss should be denied.

---

[4] In the case Defendants cite, plaintiffs alleged 53 facts and then alleged in their counts only that "Defendants' failure to provide Plaintiffs minimum wage compensation constitutes a violation of the FLSA."  (*See Rizzo-Alderson v. Tawfik*, No. 5:17-cv-312, Docket at Doc. 7.)  Plaintiffs' Complaint is a far cry from this type of complaint.

Respectfully submitted,

*/s/ Daren S. Garcia* _____
Daren S. Garcia
Florida Bar No. 592609
VORYS, SATER, SEYMOUR AND PEASE LLP
500 Grant Street, Suite 4900
Pittsburgh, Pennsylvania, 15219-2502
Telephone: (412) 904-770
Facsimile: (412) 904-7817
E-mail: dsgarcia@vorys.com

Liana R. Hollingsworth
Florida Bar No. 0076930
VORYS, SATER, SEYMOUR AND PEASE LLP
200 Public Square, Suite 1400
Cleveland, Ohio 44114
Telephone: (216) 479-6152
Fax: (216) 937-3406
E-mail: lrhollingsworth@vorys.com

*Counsel for Plaintiffs Wellnext LLC and Rainbow Light Nutritional Systems, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 8, 2018, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  Notice of this filing will be sent via email to counsel of record by operation of the Court's electronic filing system.

*/s/ Liana R. Hollingsworth*
Liana R. Hollingsworth
