**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

WELLNEXT LLC, and RAINBOW LIGHT
NUTRITIONAL SYSTEMS, LLC,

     Plaintiffs,

v.

OVM LLC, YAKOV MEYER FIGA, and
JOHN DOES 1-100, individually or as
corporate/business entities,

     Defendants.

CASE NO.: 0:17-cv-62107-PCH

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO**
**DISMISS PLAINTIFFS' COMPLAINT[1]**

---

[1] Unless otherwise indicated, all emphases below are added.

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ......................................................................................................1

II.     THE COMPLANT SHOULD BE DISMISSED. ...........................................................2

        A.      Plaintiffs Misstate The Law Because They Cannot Plead The Necessary
                Facts. ...............................................................................................................2

        B.      The Complaint Fails To Allege Any Substantive, Non-Pretextual Quality
                Control Procedures That Plaintiffs Abide By. .......................................................5

        C.      Plaintiffs' Conclusory Dilution Claim Fails. .......................................................7

        D.      Plaintiffs' Related State Law Claims Fail. ...........................................................7

        E.      Plaintiffs' Tortious Interference Claim Fails. .......................................................8

        F.      Plaintiffs' New Allegations Against Mr. Figa Are Legally Irrelevant. ..................9

        G.      Plaintiffs' Request For Leave to Amend Is Procedurally Defective and
                Futile. ...............................................................................................................9

III.    CONCLUSION .......................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bel Canto Design, Ltd. v. MSS HiFi, Inc.*,
    837 F. Supp. 2d 208 (S.D.N.Y. 2011) ..................................................................3

*Brain Pharma, LLC v. Scalini*,
    858 F. Supp. 2d 1349 (S.D. Fla. 2012) ..........................................................2, 3, 4

*Chanel, Inc. v. Italian Activewear of Florida, Inc.*,
    931 F.2d 1472 (11th Cir. 1991) .........................................................................9

*Coach Servs. v. Triumph Learning LLC*,
    668 F.3d 1356 (Fed. Cir. 2012) ..........................................................................7

*Cockrell v. Sparks*,
    510 F.3d 1307 (11th Cir. 2007) ........................................................................10

*Dahon N. Am., Inc. v. Hon*,
    No. 2:11-cv-05835-ODW, 2012 U.S. Dist. LEXIS 57510 (C.D. Cal. Apr. 24, 2012) .............7

*Dan-Foam A/S & Tempur-Pedic, Inc. v. Brand Named Beds, LLC*,
    500 F. Supp. 2d 296 (S.D.N.Y. 2007) ..................................................................6

*El Greco Leather Products Co., Inc. v. Shoe World*,
    806 F.2d 392 (2d Cir. 1986) ...........................................................................2, 3

*H.L. Hayden Co. v. Siemens Med. Sys., Inc.*,
    879 F.2d 1005 (2d Cir. 1989) .........................................................................3, 8, 9

*Jovine v. Abbott Labs., Inc.*,
    795 F. Supp. 2d 1331 (S.D. Fla. 2011) .................................................................8

*Krasnyi Oktyabr, Inc. v. Trilini Imps.*,
    578 F. Supp. 2d 455 (E.D.N.Y. 2008) ..................................................................2

*Lane v. Capital Acquisitions & Mgmt., Co.*,
    No. 04-60602 CIV, 2006 U.S. Dist. LEXIS 96422 (S.D. Fla. Apr.14, 2006) .......................9

*Long v. Satz*,
    181 F.3d 1275 (11th Cir. 1999) ........................................................................10

*Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*,
    453 F.3d 377 (6th Cir. 2006) ..........................................................................3

*Posner v. Essex Ins. Co.*,
    178 F.3d 1209 (11th Cir. 1999) .........................................................................9

670810.1

*QSGI, Inc. v. IBM Glob. Fin.*,
    No. 11-80880-CIV, 2012 U.S. Dist. LEXIS 49601 (S.D. Fla. Mar. 13, 2012) ........................8

*Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*,
    982 F.2d 633 (1st Cir. 1992) ....................................................................................3

*Technomarine SA v. Jacob Time, Inc.*,
    905 F. Supp. 2d 482 (S.D.N.Y. 2012)..........................................................1, 2, 4

*Tepper-Barak v. JM Auto, Inc.*,
    No. 16-61876, 2016 U.S. Dist. LEXIS 144185 (S.D. Fla. Oct. 18, 2016).............................10

*United States ex rel. Atkins v. McInteer*,
    470 F.3d 1350 (11th Cir. 2006) ...............................................................................10

*Warner-Lambert Co. v. Northside Dev. Corp.*,
    86 F.3d 3 (2d Cir. 1996)....................................................................................1, 6

*Wyndham Vacation Resorts, Inc. v. Timeshares Direct, Inc.*,
    123 So. 3d 1149 (Fla. Dist. Ct. App. 2012) .............................................................7

*Zino Davidoff SA v. CVS Corp.*,
    571 F.3d 238 (2d Cir. 2009)....................................................................................3

*Zip Int'l Group, LLC v. Trilini Imps., Inc.*,
    09-CV-2437 (JG) (VVP), 2011 U.S. Dist. LEXIS 55270 (E.D.N.Y. May 24, 2011) ..........2, 4

RULES

Fed. R. Civ. P. 7(b) ......................................................................................................9

## I.     __INTRODUCTION__

There is no dispute that the Rainbow Light Products sold by the Defendants are genuine products that are obtained from Plaintiffs' Authorized Distributors. Nevertheless, Plaintiffs erroneously contend that the mere creation of purported quality control procedures is sufficient to avoid the first-sale doctrine and state a claim for trademark infringement. Plaintiffs' position is unsupported by the law and, if adopted, would turn the first-sale doctrine on its head.

As explained in Defendants' Motion to Dismiss (D.I. 15, "Motion"), Plaintiffs' attempt to invoke the "quality control" exception to the first-sale doctrine suffers from two fatal flaws. First, the Complaint fails to allege any facts that would support a conclusion that the products sold by Defendants do not meet the alleged quality control procedures, *i.e.*, that the products are materially different. Having no viable response, Plaintiffs misconstrue the law to argue that such facts are unnecessary. However, under both the material difference exception to the first-sale doctrine and the "quality control test" created by the Second Circuit, Plaintiffs are required to "specifically allege an actual disruption in quality control procedures and how such disruption has or would be likely to damage the product itself and thus impact the value of the mark." *Technomarine SA v. Jacob Time, Inc.*, 905 F. Supp. 2d 482, 490-91 (S.D.N.Y. 2012).

Second, the Complaint fails to allege facts establishing that Plaintiffs' quality control procedures are "legitimate, substantial, and nonpretextual" and that "it abides by these procedures." *See Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3, 6 (2d Cir. 1996). Plaintiffs do not meaningfully respond to this argument in their Opposition.  This is because Plaintiffs themselves, as well as their Authorized Resellers, utilize third-parties (e.g., Amazon) to store, pack, ship, and handle customer service relating to, the Rainbow Light Products. Put simply, the alleged quality control procedures have no relation to goods sold online.

Plaintiffs' remaining claims (Counts II-VI) fail for the same reason—merely reselling genuine products, absent more, is not a violation of law. Plaintiffs' claim of tortious interference

1

(Count VII) is conclusory and its theory of liability is not even actionable under tort law. Finally, the Complaint fails to allege why OVM's principal, Mr. Figa is personally liable for any of the acts alleged.

## II.    THE COMPLANT SHOULD BE DISMISSED.

### A.    Plaintiffs Misstate The Law Because They Cannot Plead The Necessary Facts.

Plaintiffs assert that they are not required to "allege[] how Defendants failed to comply with Plaintiffs' quality control requirements." (Opp'n at 10). Plaintiffs are wrong. *See Technomarine*, 905 F. Supp. 2d at 490-91; *Brain Pharma, LLC v. Scalini,* 858 F. Supp. 2d 1349, 1355 (S.D. Fla. 2012) (dismissing trademark infringement claim where "[c]omplaint fails to allege … how the products sold by Defendants fail to meet these quality control measures."); *Zip Int'l Group, LLC v. Trilini Imps., Inc.*, 09-CV-2437 (JG) (VVP), 2011 WL 2132980, at *4 (E.D.N.Y. May 24, 2011) ("in order to dispute the genuineness of the goods imported and sold by [defendant], [plaintiff] must, at a minimum, produce evidence to demonstrate that *[defendant's] goods are not subject to the same type or measure of quality control as [plaintiff's] goods"*); *Krasnyi Oktyabr, Inc. v. Trilini Imps.*, 578 F. Supp. 2d 455, 468 (E.D.N.Y. 2008) ("plaintiff has not met its burden in demonstrating that defendants' goods are not genuine because it has not shown that defendants' goods are subjected to quality control standards different from its own" and *"[p]laintiff has not demonstrated any actual differences in the quality of defendants' goods."*).

Plaintiffs' argument is based on a misunderstanding of the quality control test developed by the Second Circuit in *El Greco Leather Products Co., Inc. v. Shoe World*, 806 F.2d 392 (2d Cir. 1986). That case did *not involve* the sale of genuine goods being resold through unauthorized sales channels. In *El Greco,* the plaintiff trademark holder terminated the licensed manufacture of its line of shoes. After this termination, the manufacturer sold its excess shoes

(which had not been inspected by the plaintiff pursuant to the contract) to defendant, who then sold the shoes to consumers. Because these goods had not been inspected pursuant to the trademark holder's standards, the court found the defendant's shoes not to be genuine and further noted that "the actual quality of the goods is irrelevant; it is control of quality that a trademark holder is entitled to maintain." *Id.* at 395. Plaintiffs' reliance on this case is therefore misplaced.

In *H.L. Hayden Co. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1022-23 (2d Cir. 1989), the Second Circuit clarified its holding in *El Greco* and explained that Lanham Act claims must connect the alleged infringing activity to the likelihood of consumer confusion. This is shown in each of the cases cited by Plaintiffs—far more than the mere existence of an alleged quality control procedure was needed to establish infringement. *See Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 242 (2d Cir. 2009) (perfume bottles sold by the defendant contained altered UPC codes); *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 382 (6th Cir. 2006) (defendant sold counterfeit cigarette packs); *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 643 (1st Cir. 1992) ("substantial variance in quality control" between the products sold by plaintiff and the gray market goods imported by defendant, including actual differences in packaging, ingredients, and storage/handing procedures); *Bel Canto Design, Ltd. v. MSS HiFi, Inc.*, 837 F. Supp. 2d 208, 219 (S.D.N.Y. 2011) (audio components sold by unauthorized distributor contained altered serial numbers). Tellingly, Plaintiffs do not even try to compare their allegations to ***the facts*** in these decisions.

Plaintiffs also have no legitimate response to this court's decision in *Brain Pharma*. (*See* Motion at 14-15). Plaintiffs assert that, there, the plaintiff "did not allege what its quality control measures were" and, therefore "the court was unable to assess whether plaintiff had implemented legitimate quality controls...." (Opp'n at 11). But, in *Brain Pharma*, the plaintiff attempted to invoke some of the same quality procedures that Plaintiffs do here. 858 F. Supp. 2d at 1355 (alleging that the "products sold by Defendants ***are not inspected*** by [plaintiff], [its] authorized

3

distributor, and/or dealers prior to sale"). Subsequent decisions have cited *Brian Pharma* with approval for the proposition that, to defeat a motion to dismiss based on the "quality control test," a trademark holder must **"specifically allege an actual disruption in quality control procedures** and how such disruption **has or would be likely to damage the product itself** and thus impact the value of the mark." *Technomarine SA*, 905 F. Supp. 2d at 490-91.

Citing Paragraph 34 of the Complaint, Plaintiffs also assert that *Brain Pharma* is distinguishable because Plaintiffs **"have alleged** that Defendants failed to comply with [its alleged] quality control standards" (Opp'n at 11) (emphasis added).  This is nonsense.  Paragraph 34 states:

> The unauthorized products Defendants sell are materially different than genuine Rainbow Light Products, as they are sold without Wellnext's quality controls and customer service benefits which are essential elements of Rainbow Light Products.

This circular allegation is silent as to any facts showing how Defendants failed to comply with Plaintiffs' purported quality control requirements.[2]

Whether applying the "quality control test" or the "material difference" exception to the first-sale doctrine, the Complaint fails to state a claim for trademark infringement.  *See Brain Pharma,* 858 F. Supp. 2d at 1355 ("[I]n the absence of specific, nonconclusory factual allegations which allege that **the products sold by Defendants** do not meet Plaintiff's standard quality control measures, the Court finds that Plaintiff has failed to state a claim for trademark infringement."); *see also Zip Int'l Group, LLC*, 2011 WL 2132980, at *4 ("Zip has produced no evidence indicating that the seeds sold by Trilini are of an inferior quality to those sold by Zip, or that the standards to which Trilini's products are held are any different from those to which Zip's own products are held."); *Technomarine SA*, 905 F. Supp. 2d at 493 ("Because plaintiff fails to

---

[2] During the December 5, 2017 Status Conference Plaintiffs' counsel conceded that  the Rainbow Light Products sold by Defendants "are genuine, authentic Rainbow [Light] products ...." (D.I. 16 at 10:15-11:4).

allege facts to support consumer confusion arguments based on interference with warranties or quality control, material differences, counterfeiting, or likelihood of actual confusion, plaintiff has no plausible claim … under the Lanham Act.").

Finally, Plaintiffs now seek to introduce a new theory of infringement, namely that "[b]y selling products ***anonymously*** outside of Plaintiffs' authorized channels, Defendants have interfered with the Plaintiffs' ability to control the quality of the product under the Rainbow Light name." (Opp'n at 10). Contrary to Plaintiffs' insinuations, the Complaint is silent as to this theory or any supporting facts. Plaintiffs also provide no legal support for this theory, which is irreconcilable with the first-sale doctrine.

### B. The Complaint Fails To Allege Any Substantive, Non-Pretextual Quality Control Procedures That Plaintiffs Abide By.

As explained in Defendants' Motion, while the Complaint describes Plaintiffs' purported quality control requirements in general (e.g., those that may apply to brick and mortar stores), Plaintiffs do not allege what standards, if any, apply to retail ***internet sales,*** like those at issue here. (Motion at 7). Plaintiffs' refusal to acknowledge or address this issue is not a mere oversight. It is because the realities of such sales completely undermine Plaintiffs' claims.

As previously noted, Plaintiffs sell their products directly to consumers through an Amazon storefront. (Motion at 3). In this regard, as shown below, Plaintiffs utilize Amazon's "Fulfilment by Amazon" ("FBA") service (*see* red box):



As such, the Rainbow Light Products offered by Plaintiffs are stored in "Amazon's fulfillment centers," and Amazon "pick[s], pack[s], ship[s], and provides customer service for these products."[3] Put simply, Plaintiffs have **no control** whatsoever as to the whether the Rainbow Light Products are, for example: (1) "store[d] . . . in a cool, dry place, away from direct sunlight, extreme heat, and dampness, and in accordance with . . . storage guidelines specified by Wellnext"; or (2) "inspect[ed] . . . upon receipt and during storage for damage, defect, evidence of tampering, or other non-conformance, and to confirm that product seals have not been broken . . ." (Opp'n at 5). In fact, ***Plaintiffs are required to guarantee to Amazon*** that its products are "able to withstand . . . at least a maximum temperature of 100 degrees for the duration of the product's shelf life without adversely affecting product quality."[4] Plaintiffs' alleged quality control procedures are obviously not ***"legitimate, substantial, and nonpretextual."*** *See Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3, 6 (2d Cir. 1996). They are a sham.

Furthermore, "[i]n order to succeed in an action for trademark infringement or dilution based on this quality control theory, … ***a trademark owner must be able to show that it actually follows the quality control procedures it alleges.*** *Dan-Foam A/S & Tempur-Pedic, Inc. v. Brand Named Beds, LLC*, 500 F. Supp. 2d 296, 315-16 (S.D.N.Y. 2007) (emphasis added). However, ***the Complaint fails to allege that Plaintiffs or their Authorized Sellers abide by any quality control procedures***. Plaintiffs now state, without explanation, that they "abide by their procedures." (Opp'n at 10 (citing Compl. at ¶¶ 14, 20-28)). But the cited paragraphs say nothing of the sort—they are a meaningless recitation of alleged "requirements" and "prohibitions" that Plaintiffs supposedly ask their Authorized Resellers to follow. For the reasons detailed above, Plaintiffs cannot make this required factual allegation in good faith.

---

[3] *See* https://services.amazon.com/fulfillment-by-amazon/benefits.html.

[4] *See* FBA Product Restrictions, Date- and Temperature- Sensitive Products, available at https://www.amazon.com/gp/help/customer/display.html?nodeId=200339730.

### C.      Plaintiffs' Conclusory Dilution Claim Fails.

Plaintiffs suggest that by merely pleading the *elements* of a dilution claim, they have satisfied the federal pleading requirements.  (*See* Opp'n at 14). But Plaintiffs appear to recognize that their pleadings are defective, as they "refer the Court to the Rainbow Light website" and suggest that the Court determine, on its own, that the RAINBOW LIGHT Marks "are famous" (*Id.* at 13). Simply alleging that a mark is famous is not enough because "a mark can acquire sufficient public recognition and renown to be famous for purposes of likelihood of confusion without meeting the more stringent requirement for dilution fame." *Coach Servs. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012) (citations omitted).

"[T]rademark dilution claims are restricted to truly famous marks such as Budweiser beer, Camel cigarettes, and Barbie dolls." *Dahon N. Am., Inc. v. Hon*, No. 2:11-cv-05835-ODW (JCGx), 2012 U.S. Dist. LEXIS 57510, at *25 (C.D. Cal. Apr. 24, 2012). Despite allegedly being the "Most Trusted Natural Vitamin Brand in 2014," (Opp'n at 14), "Rainbow Light" is not  a truly famous mark. *Coach Servs.*, 668 F.3d at 1373 ("a famous mark is one that has become a 'household name.'"). Plaintiffs' dilution claim (Count IV) fails and cannot be cured.

### D.      Plaintiffs' Related State Law Claims Fail.

The parties agree that Plaintiffs' state-law claims (Counts V and VI) rise or fall with its federal-law claims. For the reasons stated in the Motion and above, they should be dismissed.

With respect to Plaintiffs' FDUPTA claim, they paradoxically argue that they "have standing to bring their FDUTPA claim," not because of what Plaintiffs are, but rather because of what they are not (i.e., non-consumers) (*See* Opp'n at 15-16).  But merely claiming to be a "non-consumer" is not enough to establish FDUTPA standing—for that, Plaintiffs must allege that they have incurred *actual damages* from a FDUTPA violation. *See Wyndham Vacation Resorts, Inc. v. Timeshares Direct, Inc.,* 123 So. 3d 1149, 1151-52 (Fla. Dist. Ct. App. 2012) ("actual damages" are required under the FDUTPA because its "clear intent is to provide both equitable

7

and legal remedies to aggrieved parties or persons, including businesses, ***who have sustained actual losses because of a violation of its provisions"***). Plaintiffs have never purchased anything from Defendants, so Plaintiffs cannot plead any actual damages, as required to state a claim under the FDUTPA.

As the Honorable Federico A. Moreno explained, in granting the defendant's summary judgment on a FDUTPA claim in *Kelly v. Plamer, et al.,* 681 F. Supp. 2d 1356, 1376 (S.D. Fla. 2010):

> ***There is simply no nexus to trade or commerce between these parties*** through the firm's demand letters. ***And absent that important nexus, the entire FDUTPA statutory scheme does not apply*** to these particular circumstances … .

Likewise, because no such "important nexus" exists between Plaintiffs and Defendants here, "the entire FDUTPA statutory scheme does not apply."

Count VI should also be dismissed for this additional reason. *QSGI, Inc. v. IBM Glob. Fin.*, No. 11-80880-CIV, 2012 U.S. Dist. LEXIS 49601, at *13 (S.D. Fla. Mar. 13, 2012) (dismissing FDUPTA claim where plaintiff "failed to plead any facts from which one could plausibly infer the degree to which, or even whether, the market value of any product has changed as a result of [defendant's] purported conduct"); *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1344 (S.D. Fla. 2011) (dismissing FDUPTA claim that sought only consequential damages "beyond the purchase price of the product" that was the subject of the consumer transaction).

### E.     Plaintiffs' Tortious Interference Claim Fails.

Plaintiffs have not (and cannot) adequately plead a claim for tortious interference.  As explained, even if Plaintiffs' allegation were proven, interference in a product distribution scheme is ***not actionable under tort law.*** *See H.L. Hayden Co.*, 879 F.2d at 1024 (alleged interference in Authorized Dealership Agreement between manufacturer and dealer, based on

inducing dealers to sell products in violation of Agreement, could not support tortious interference claim).  Plaintiffs do not address *H.L. Hayden* or cite any case to the contrary.

In addition, Plaintiffs' allegations with respect to the four elements of a tortious interference claim are conclusory. (*See* Motion at 12-14).  For example, Plaintiffs do not explain how any ***business relationship*** has been "damaged" as a result of Defendants' actions. (*See, e.g.,* Compl. ¶130 (stating only that "Defendant's actions have caused injury to Plaintiffs …")).

### F.     Plaintiffs' New Allegations Against Mr. Figa Are Legally Irrelevant.

In its Opposition, Plaintiffs misleadingly represent that they have "allege[d] that Mr. Figa …, as the operator of [an Amazon] storefront, … has unlawfully acquired products from Wellnext's distributors and unlawfully sold products bearing the Rainbow Light Trademark on Amazon." (Opp'n at 19).  The Complaint contains no such allegation—Counts I through VII are silent as to any actions purportedly taken by Mr. Figa.

Even if pled, such an allegation is insufficient to state a claim for liability for trademark infringement. *See Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1478 n.8 (11th Cir. 1991) ("The individual liability standard … asks whether he actively participated as a moving force in the decision to engage in the infringing acts, or otherwise caused the infringement as a whole to occur."). Moreover, Mr. Figa is improperly lumped together with OVM in the definition of "Defendants." *Lane v. Capital Acquisitions & Mgmt., Co.*, No. 04-60602 CIV, 2006 U.S. Dist. LEXIS 96422, at *5 (S.D. Fla. Apr.14, 2006) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, the Complaint fails to satisfy the minimum standard of Rule 8.").

### G.     Plaintiffs' Request For Leave to Amend Is Procedurally Defective and Futile.

Recognizing the tenuous nature of its claims, Plaintiffs seek leave to amend their Complaint. However, a request for leave to amend a pleading is not properly made when simply included in a response to a motion. *See* Fed. R. Civ. P. 7(b); *Posner v. Essex Ins. Co.*, 178 F.3d

9

1209, 1222 (11th Cir. 1999) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly."). In addition, the request fails to satisfy the requirement that "[a] motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999).

The Complaint should be dismissed with prejudice for these reasons alone. *See Tepper-Barak v. JM Auto, Inc.*, No. 16-61876, 2016 U.S. Dist. LEXIS 144185, at *3 (S.D. Fla. Oct. 18, 2016) ("[A] district court acts well within its authority if it dismisses ***with prejudice*** a complaint in a case where, as here, 'the plaintiff fail[s] to attach the proposed amendment or set forth the substance of the proposed amendment' but rather includes the request for leave to amend in a memorandum filed in opposition to the defendant's motion to dismiss.") (emphasis in original) (quoting *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1362 (11th Cir. 2006)).

Procedural defects aside, amendment would be futile. There is no dispute that Defendants are doing nothing more than reselling genuine, first quality, goods. And, as detailed above, Plaintiffs' purported quality control procedures are, on their face, a sham and bear no relation to the realities of online sales, including Plaintiffs' own sales on Amazon. For this reason too, dismissal with prejudice is appropriate. *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant.").

## III.   <u>CONCLUSION</u>

After eliminating its legal conclusions, the Complaint merely alleges that Defendants have sold Rainbow Light Products without authorization. But the unauthorized sale of a trademarked article does not, without more, constitute a violation of the Lanham Act or Florida Law. The Complaint should be dismissed with prejudice.

10

670810.1

Dated: January 22, 2018

Respectfully submitted,

By:  /s/ Gary T. Stiphany
Gary T. Stiphany (Fla. Bar # 342513)
STIPHANY LAW
80 S.W. 8th Street, Suite 3100
Miami, FL  33130
Tel. (305) 536-8882
Fax. (305) 579-4722
Gary@StiphanyLaw.com

Anthony F. Lo Cicero (*Admitted Pro Hac Vice*)
Mark Berkowitz (*Admitted Pro Hac Vice*)
AMSTER ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY 10016
(212) 336-8000
alocicero@arelaw.com
mberkowitz@arelaw.com

***Counsel for Defendants, OVM LLC and YAKOV MEYER FIGA***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true copy of the foregoing motion and supporting declaration was filed electronically through the Court's CM/ECF System this 22nd day of January, 2018.  Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system.

/s/ Gary T. Stiphany
Gary T. Stiphany

11

670810.1