UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 17-CV-62107-HUCK

WELLNEXT LLC, and RAINBOW LIGHT
NUTRITIONAL SYSTEMS LLC,

    Plaintiffs,

vs.

OVM LLC, YAKOV MEYER FIGA, and
JOHN DOES 1-100,

    Defendants.
_____/

## ORDER GRANTING-IN-PART MOTION TO DISMISS

THIS MATTER is before the Court on Defendants, OVM LLC and Yakov Meyer Figa's ("Defendants[']") Motion to Dismiss ("Motion" [D.E. No. 15]), filed on January 8, 2018. Defendants seek to dismiss the claims asserted by Plaintiffs Wellnext LLC and Rainbow Light Nutritional Systems LLC ("Plaintiffs") in the Complaint [D.E. 1], filed on October 27, 2017. Plaintiffs filed a Response ("Response" [D.E. 20]); Defendant filed a Reply ("Reply" [D.E. 21]).

Plaintiffs allege that Defendants have obtained Plaintiffs' goods outside of its network of authorized resellers ("Authorized Resellers") and re-sold them anonymously on Amazon. According to Plaintiffs, these actions constitute trademark infringement, false advertising and unfair competition, trademark dilution, and tortious interference with Plaintiffs' business relationships with distributors. The Court has carefully considered the parties' written submissions and applicable law. For the reasons that follow, the Court grants in part and denies in part Defendants' Motion.

1

I.  **BACKGROUND**

According to the Complaint, Plaintiffs develop, manufacture, market, and sell dietary and nutritional supplements under the Rainbow Light® brand. (Compl. at ¶ 13.) Rainbow Light has registered numerous trademarks with the United States Patent and Trademark Office, including RAINBOW LIGHT® and others (the "Rainbow Light Trademarks"). (*Id.* at ¶ 15.)

The Complaint states that Rainbow Light products are sold exclusively through a network of Authorized Resellers. (*Id.*) Defendants are not Authorized Resellers of Rainbow Light products. (*Id.* at ¶ 31.) Defendants, however, have sold, and continue to sell, products bearing the Rainbow Light Trademarks anonymously on Amazon under the storefront names "GoGreen 2017 LLC," "Hashem Yazor," and "Ocean View Marketing." (*Id.* at ¶¶ 3–4, 29, 32.) Plaintiffs have agreements with their distributors that prohibit the distributors from selling products to parties who are not Authorized Resellers. (*Id.* at ¶¶ 27, 126.) According to the Complaint, Defendants were made aware of this prohibition on September 18, 2017, through the cease and desist letter Plaintiffs sent them. (*Id.* at ¶¶ 33, 38, 127.)

According to the Complaint, Plaintiffs have implemented a stringent quality control program with the twin aims of protecting consumers and protecting the goodwill associated with the Rainbow Light brand. (*Id.* at ¶¶ 20–28.) Plaintiffs allege that these quality control standards ensure that consumers who buy Rainbow Light products receive safe and quality products. (*Id.* at ¶¶ 14, 20, 28.) These standards include 1) allowing sales only through Authorized Resellers (*id.* at ¶¶ 13–14, 27), 2) requiring Authorized Resellers to store Rainbow Light products in a cool, dry place, away from direct sunlight, extreme heat, and dampness, and in accordance with Current Good Manufacturing Practices, applicable laws, rules and regulations (*id.* at ¶ 23), 3) requiring Authorized Resellers to inspect Rainbow Light products upon receipt and during storage for damage, defect, evidence of tampering, or other non-conformance, and to confirm

that product seals have not been broken (*id.*), 4) requiring Authorized Resellers to inspect their inventory regularly for expired or soon-to-be expired Rainbow Light products and remove any such products from inventory (*id.*), and 5) prohibiting Authorized Resellers from selling expired Rainbow Light Products (*id.*).

Defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted. Defendants assert various substantive and procedural arguments against each of the Counts of the Complaint. The Court will address each argument in turn.

## II.   LEGAL STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the Complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *Twombly*, 550 U.S. at 555. "Rule

8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

### III. ANALYSIS

#### A. Trademark Infringement.

In order to succeed on the merits of a trademark infringement claim, a plaintiff must show that the defendant used the mark in commerce without its consent and "that the unauthorized use was likely to deceive, cause confusion, or result in mistake." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1307 (11th Cir. 1998). "Generally speaking, the determination boils down to the existence *vel non* of 'likelihood of confusion.'" *Davidoff & Cie, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1301 (11th Cir. 2001) (citing *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1538 (11th Cir. 1986)).

"Consumers who purchase a particular product expect to receive the same special characteristics every time." *Davidoff*, 263 F.3d at 1301. The Lanham Trademark Act protects these expectations by excluding others from using a particular mark and making consumers confident that they can purchase brands without being confused. Thus, trademark law ensures consistency for the benefit of consumers. *Davidoff*, 263 F.3d at 1301.

4

The Lanham Act also prevents another vendor from acquiring a product that has a different set of characteristics and passing it off as the trademark owner's product. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 778 (1992) (Stevens, J., concurring) (noting that passing off is a form of infringement prohibited by the Lanham Act). This would potentially confuse consumers about the quality and nature of the trademarked product and erode consumer goodwill. *Davidoff*, 263 F.3d at 1301 (citing *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 303 (3d Cir. 1998); *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 636 (1st Cir. 1992)).

However, the resale of genuine trademarked goods generally does not constitute infringement. *Davidoff*, 263 F.3d at 1301. When consumers purchase resold, genuine trademarked goods, they are not confused as to the origin of the goods: the origin has not changed as a result of the resale. *Id.* Under the "first sale" or "exhaustion" doctrine, the trademark protections of the Lanham Act are exhausted after the trademark owner's first authorized sale of that product. *See id.*; *Allison v. Vintage Sports Plaques*, 136 F.3d 1443, 1447–48 (11th Cir. 1998). Therefore, even though a subsequent sale is without a trademark owner's consent, the resale of a genuine good generally does not violate the Lanham Act.

This doctrine does not hold true, however, when an alleged infringer sells trademarked goods that are materially different from those sold by the trademark owner. *Davidoff*, 263 F.3d at 1302. The resale of a trademarked product that is materially different can constitute trademark infringement. *Id.* Materially different products that have the same trademark may confuse consumers and erode consumer goodwill toward the mark. *See Iberia Foods*, 150 F.3d at 303; *Nestle*, 982 F.2d at 638. "Because a myriad of considerations may influence consumer preferences, the threshold of materiality must be kept low to include even subtle differences

5

between products." *Davidoff*, 263 F.3d at 1302 (citing *Iberia Foods*, 150 F.3d at 304; *Nestle*, 982 F.2d at 641).

"[T]he lack of quality control can rise to the level of a material difference from the trademark owner's product and create a likelihood of confusion." *Davidoff*, 263 F.3d at 1302 (citing *Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3, 7 (2d Cir. 1996)). To establish a claim for trademark infringement based on failure to follow quality control standards, "[t]he trademark holder must demonstrate only that: (i) it has established legitimate, substantial, and nonpretextual quality control procedures, (ii) it abides by these procedures, and (iii) the non-conforming sales will diminish the value of the mark." *Warner-Lambert Co.*, 86 F.3d at 6. In order to support such a claim at the motion to dismiss stage, the Complaint must allege "(1) what Plaintiff's quality control measures are and (2) how the products sold by Defendants fail to meet these quality control measures." *Brain Pharma, Ltd. Liab. Co. v. Scalini*, 858 F. Supp. 2d 1349, 1355 (S.D. Fla. 2012).

Defendants' Motion is premised on their contention that "[o]ther than conclusory statements, the Complaint fails to allege any facts showing how ***Defendants fail to distribute the products in accordance with these purported quality control and customer service standards***." (Mot. at 6 (emphasis in original).) Defendants are correct—the Complaint fails to allege that Defendants have failed to abide by Plaintiffs' quality control standards. The Complaint alleges that "[t]he products sold by Defendants are materially different because, among other reasons, they are not subject to the same quality control standards and customer service as genuine Rainbow Light Products." (Compl. at ¶ 52.) But, this is not the same as alleging that Defendants do not abide by the quality control standards. Even though Defendants are not ***subject to*** the quality control standards, they could still abide by them without Plaintiffs' oversight. Thus, the Complaint fails to sufficiently allege that the products sold by Defendants do not meet Plaintiffs'

6

standard quality control measures and the Court finds that Plaintiffs have failed to state a claim for trademark infringement. The Court will dismiss Count I of the Complaint and afford Plaintiffs the opportunity to re-plead.[1]

### B. False Advertising and Unfair Competition.

Defendants challenge Plaintiffs' false advertising and unfair competition claims, asserting that they fail for the same reasons as Plaintiffs' trademark infringement claims. To state a claim for unfair competition and false designation of origin, "a plaintiff must show (1) that the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two." *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647–48 (11th Cir. 2007) (internal quotations omitted). For the same reasons discussed above, the Court finds that Plaintiffs have failed to state a claim for unfair competition and false designation of origin.

If Defendants are merely reselling Plaintiff's *genuine* products, the first sale doctrine would bar Plaintiff's claim. *Davidoff & CIE, S.A.*, 263 F.3d at 1301 ("This is for the simple reason that consumers are not confused about the origin of the goods: the origin has not changed as a result of the resale."). But, materially different products that have the same trademark may confuse consumers and erode consumer goodwill toward the mark. *See Iberia Foods*, 150 F.3d at 303; *Nestle*, 982 F.2d at 638. "[T]he lack of quality control can rise to the level of a material difference from the trademark owner's product and create a likelihood of confusion." *Davidoff*, 263 F.3d at 1302. Thus, to the extent that Plaintiffs can articulate how the products Defendants

---

[1] It is unnecessary at this time to resolve Defendants' argument that "while the Complaint describes Plaintiffs' purported quality control and customer service requirements *in general*, Plaintiffs do not allege what quality-control standards, if any, apply to retail *internet sales* like those of Defendants" and the Complaint should therefore be dismissed. However, the Court notes that this is a purely fact-based argument that is independent of the allegations of the Complaint. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Thus, at best, Defendants' argument may be more appropriately addressed in a future motion for summary judgment, when the parties can present the requisite record evidence regarding this issue.

sold failed to meet these standards, Plaintiffs can meet their burden of showing that customer confusion could occur as a result of Defendants' sales. Accordingly, the Court will dismiss Counts II and III and afford Plaintiffs the opportunity to re-plead these claims.

### C. Trademark Dilution.

Defendants also move to dismiss Plaintiffs' claim for trademark dilution on the grounds that Plaintiffs have failed to state a claim. (Mot. at 8–10.) First, Defendants argue that Plaintiffs have failed to allege sufficient facts to establish that the Rainbow Light Marks are famous. (*Id.* at 9.) Second, Defendants contend that Plaintiffs fail to allege any facts that Defendants began to use the Rainbow Light Marks after the marks became famous. (*Id.*) Finally, Defendants state that they believe Plaintiffs have failed to allege any facts that Defendants' use of the Rainbow Light Marks is likely to cause dilution by blurring or tarnishment. (*Id.* at 9–10.) Plaintiffs state that they have alleged sufficient facts to establish the famousness of the Rainbow Light Marks and the elements of a trademark dilution claim by tarnishment. (Resp. at 13–15.) In support, Plaintiffs invite the Court to examine its website, which, of course, would be inappropriate in resolving the Motion.

"Under federal law, an owner of a famous, distinctive mark is entitled to an injunction against the user of a mark that is likely to cause dilution of the famous mark." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 105 (2nd Cir. 2009). Federal law provides two ways in which dilution can occur. "'[D]ilution by blurring' is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(B). "'[D]ilution by tarnishment' is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C).

The Court agrees with Defendants that Plaintiffs have failed to allege sufficient facts establishing that the Rainbow Light Marks are famous. A mark is famous "if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). To determine whether a mark is recognized by the public, courts consider factors such as (1) the duration, extent, and geographic reach of advertising and publicity of the mark; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (3) the extent of actual recognition of the mark; and (4) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register. *Id.* Trademark dilution claims, are limited to "truly famous marks such as Budweiser beer, Camel cigarettes, and Barbie dolls." *Brain Pharma*, 858 F. Supp. 2d at 1357 (quoting *Dahon N. Am., Inc. v. Hon*, No. 2:11-cv-05835, 2012 U.S. Dist. LEXIS 57510, 2012 WL 1413681, at *9 (C.D. Cal. Apr. 24, 2012)).

Plaintiffs claim in their Response that "the Rainbow Light name originated in 1981, [that] Plaintiffs have been creating natural, food-based supplements under the Rainbow Light brand for over 30 years, and that 'Rainbow Light is synonymous with natural health and nutrition' and has the 'reputation as the #1 Most Trusted Natural Vitamin Brand.'" (Resp. at 14.) Plaintiffs also assert that "it earned the reputation as the #1 Most Trusted Natural Vitamin Brand in 2014." (*Id.*) But none of these facts are contained in the Complaint. Rather, the Complaint contains only conclusory assertions and fails to allege any facts which establish that the Rainbow Light Marks are famous. (*See* Compl. ¶¶ 19, 87–90.) Plaintiff's mere allegation that the Rainbow Light Marks are famous is insufficient to state a trademark dilution claim. *See Brain Pharma*, 858 F. Supp. 2d at 1357 (citing *Hon*, 2012 U.S. Dist. LEXIS 57510, 2012 WL 1413681, at *9) ("DNA supplies only conclusions relating to the fame of the Original DAHON, BIOLOGIC, or ECOLOGIC marks. As to the relatively obscure Original BIOLOGIC and ECOLOGIC marks, DNA's

9

assertion that these are famous marks is highly implausible. . . . But whatever that level of fame is, it falls far short of the high standard required for a dilution claim. The Court greatly doubts that the general public of the United States is familiar with the Original DAHON mark. Further, the fame of the Original DAHON mark cannot compare with that of a truly famous mark, such as Coca—Cola.")). Plaintiffs allege only conclusory statements about their marks.

The Court also agrees with Defendants that the Complaint fails to allege that Defendants began to use the Rainbow Light Marks after they became famous. There are no allegations in the Complaint about the date that Defendants began using the Rainbow Light Marks or that this use commenced after the mark became famous. Accordingly, these two pleading deficiencies represent separate grounds for dismissing Plaintiffs' trademark dilution claim without prejudice. The Court will dismiss Plaintiffs' trademark dilution claim without prejudice and afford Plaintiffs the opportunity to re-plead their trademark dilution claim.

### D. Common Law Trademark Infringement.

The parties appear to agree that Plaintiffs' common law trademark infringement claims rise or fall with the claims brought under the Lanham Act. (*See* Mot. at 10–11; Resp. at 15.) The Court agrees. *See Natural Answers, Inc. v. Smithkline Beecham, Corp.*, 529 F.3d 1325, 1332-33 (11th Cir. 2008) ("Since [the plaintiff] is unable to bring an unfair competition claim under the Lanham Act, under the theory of either false advertising or trademark infringement, it follows that the common law claims based on unfair competition and trademark infringement must fail as well."); *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 801 (11th Cir. 2003) ("[T]he analysis of Florida statutory and common law claims for trademark infringement and unfair competition is the same as under the federal trademark infringement claim[.]"); *Provide Commerce, Inc. v. Preferred Commerce, Inc.*, No. 07-80185 CIV, 2008 U.S. Dist. LEXIS 27697, 2008 WL 926777, at *4 (S.D. Fla. Apr. 4, 2008) ("[B]oth the Federal and Florida state causes of

action for dilution involve the same principles.). The Court addressed Plaintiffs' Lanham Act claims above, dismissing them without prejudice. Accordingly, the Court will dismiss Plaintiffs' common law trademark and afford Plaintiffs the opportunity to amend.

### E. Florida Unfair and Deceptive Trade Practices Act ("FDUTPA").

"The success of Plaintiff[s'] . . . FDUTPA claims is tied to the federal Lanham Act claims for infringement and false advertising." *Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of the Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem, Knights of Malta, the Ecumenical Order*, 702 F.3d 1279, 1296 (11th Cir. 2012) (citing *Natural Answers, Inc.*, 529 F.3d 1325, 1333 (11th Cir. 2008)). Accordingly, the Court will dismiss Count VI, but afford Plaintiffs the opportunity to re-plead this claim.

With regard to Defendants' argument that Plaintiffs lack standing under FDUTPA, the Court disagrees. In support of its argument, Defendants rely almost exclusively on *Pinecrest Consortium, Inc. v. Mercedes-Benz USA, LLC*, No. 13-20803, 2013 U.S. Dist. LEXIS 59558, at *3-4 (S.D. Fla. April 25, 2013). But the *Pinecrest* decision is easily distinguishable. There, the court noted that the corporation that was the purported plaintiff in the case was formed for the purpose of bringing lawsuits. *Id.* at *2. Unlike here, the *Pinecrest* plaintiff could not claim that it was harmed as a result of the allegedly deceptive practices but rather could only assert that it was "in a position to complaint (sic) (that he or she or it was aggrieved by the alleged violation) and that the violations has occurred, is now occurring or is likely to occur in the future." *Id.* at *1. Plaintiffs suffer from no such limitations. In fact, the *Pinecrest* court noted that "the statute's original scope has been broadened by subsequent amendments and that the term 'consumer' has been replaced by other terms in various places" and that the legislative history indicates that these changes were intended to clarify that "business entities harmed by [a] competitor's

11

anticompetitive acts[] may maintain an action if they were harmed by an act in violation of FDUTPA." *Id.* at \*2 (internal quotation and citation omitted). This accords with the holdings of Florida state appellate courts that non-consumers have standing under FDUTPA. *See Off Lease Only, Inc. v. LeJeune Auto Wholesale, Inc.*, 187 So. 3d 868, 869 n.2 (Fla. Dist. Ct. App. 2016); *Bailey v. St. Louis*, 196 So. 3d 375, 383 (Fla. Dist. Ct. App. 2016); *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 169 (Fla. Dist. Ct. App. 2015). Therefore, provided that Plaintiffs are able to re-plead this claim to allege actual harm as a result of Defendants' actions in violation of the FDUTPA, Plaintiffs will have standing to bring a claim.

### F. Tortious Interference.

Under Florida a law, there are four elements required to establish a cause of action for tortious interference with a business relationship: 1) the existence of a business relationship between the plaintiff and a third party; 2) defendant's knowledge of the relationship; 3) defendant's intentional and unjustified interference with that relationship; and 4) damage to the plaintiff as a result of the interference. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994) (quoting *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126 (Fla. 1985)). "A protected business relationship need not be evidenced by an enforceable contract. However, the alleged business relationship must afford the plaintiff existing or prospective legal or contractual rights." *Id.*

#### i. Plaintiffs Adequately Allege the Existence of a Business Relationship.

Defendants argue that Plaintiffs' failure to identify the Authorized Reseller that sold products to Defendant is fatal to their claims. (Mot. at 12.) In pleading the existence of a business relationship, Plaintiffs must allege a relationship "that afford[s] the [Plaintiffs] existing or prospective legal or contractual rights." *Ethan Allen, Inc.*, 647 So. 2d at 814 (quoting *Register v.*

*Pierce*, 530 So. 2d 990, 993 (Fla. Dist. Ct. App. 1988)). Plaintiffs cannot allege a business relationship with "the community at large." *Id.* at 815.

Defendants rely on *SkyVenture Orlando, LLC v. SkyVenture Mgmt., LLC*, No. 6:09-cv-396, 2009 U.S. Dist. LEXIS 77212 (M.D. Fla. Aug. 12, 2009), for the proposition that the failure to identify a specific business relationship is fatal to Plaintiffs' claims. (Mot. at 12.) However, that case does not stand for the proposition posited by Defendants. In *SkyVenture*, the Court dismissed claims where the defendant was a party to the contracts at issue. *SkyVenture Orlando*, No. 6:09-cv-396, 2009 U.S. Dist. LEXIS 77212, at *21 (citing *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1294 (11th Cir. 2001)). That is not at issue in the present case. Rather, Plaintiffs allege that they have business relationships with a specific group of Authorized Resellers, that Defendants purchase products from the Authorized Resellers in violation of the agreements that control the business relationship, and that those purchases tortiously interfere with the business relationships. (Compl. at ¶¶ 22, 27, 37–39, 125–130.) Plaintiffs therefore adequately identify the relevant relationship at issue, i.e., the Authorized Resellers. *See Novell v. Bank of Am. Corp.*, No. 14-CV-80672, 2014 U.S. Dist. LEXIS 180717, at *16–18 (S.D. Fla. Dec. 3, 2014). To the extent that Plaintiffs are understandably unable to identify the specific breaching Authorized Resellers at this time, minimal discovery would reveal that information. Plaintiffs' present inability to identify the Authorized Reseller is not fatal to their tortious interference claim. *Id.* at n.4.

ii. **Plaintiffs Adequately Allege Knowledge of Business Relationship.**

As to the second element of tortious interference, Plaintiffs have sufficiently alleged that Defendants had knowledge of the business relationship. (Compl. at ¶¶ 33, 127.) Defendants themselves do not contend that they did not have knowledge of Plaintiffs' relationship with the Authorized Resellers. Rather, Defendants argue that Plaintiffs' allegations are insufficient

because "Plaintiffs do not explain how Defendants supposedly knew of such agreements or the alleged prohibitions." (Mot. at 13.) Defendants provide no support for their argument that such explanation of "how" Defendants knew is required at this stage of the litigation. The Court is unaware of any case law that would require Plaintiffs to specifically allege how Defendants knew at this stage. Therefore, Plaintiffs are not required to plead these additional factual allegations to survive Defendants' Motion.

### iii. Plaintiffs Adequately Allege Intentional Interference.

Defendants claim that "there is no mention of intent on the part of the Defendants to damage any business relationship." (Mot. at 13.) It is noteworthy that the only two cases relied upon by Defendants regarding this element were resolved only after full development of the facts: on a motion for directed verdict (*Smith v. Emery Air Freight Corp.*, 512 So. 2d 229 (Fla. Dist. Ct. App. 1987)) and on a motion for summary judgment (*H.L. Hayden Co. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005 (2nd Cir. 1989)). Defendants' argument fails because Plaintiffs' Complaint sufficiently alleges the requisite intentional interference.

To adequately allege tortious interference with a business relationship, Plaintiffs must allege direct interference with their business relationship with the Authorized Resellers. *See Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1224 (Fla. Dist. Ct. App. 1980) ("There is no such thing as a cause of action for interference which is only negligently or consequentially effected."). That is what Plaintiffs have done here. Plaintiffs have alleged that Defendants were aware of the agreements that prohibited the Authorized Resellers from selling products to Defendants for resale and that, despite that knowledge, Defendants intentionally induced the Authorized Resellers to breach their agreements with Plaintiffs by making the prohibited sales. (Compl. at ¶¶ 38–39 The Court finds these allegations, taken as true at this stage of the proceedings, sufficient to allege intentional and unjustifiable interference with the business relationship. Whether

Defendants intended to interfere with Plaintiffs' business relationships with the Authorized Resellers may be more appropriately addressed on a future motion for summary judgment, when the parties can present the requisite record evidence regarding this issue.

### iv. Plaintiffs Adequately Allege Harm.

Defendants claim that dismissal is warranted because "Florida law requires *actual harm* to a business relationship, as opposed to merely a suspicion or unsupported and speculative supposition of harm," which the Complaint does not establish. (Mot. at 13–14 (emphasis in original).) Defendants rely on a case applying the relevant standard for post-verdict motions. (*Id.* at 14 (citing *Realauction.com, LLC v. Grant St. Grp., Inc.*, 82 So. 3d 1056, 1058 (Fla. Dist. Ct. App. 2011).).) As Plaintiffs observe, this issue is more appropriately addressed on a future motion for summary judgment. Plaintiffs' Complaint sufficiently alleges harm at this stage of the proceedings. (*See* Compl. at ¶¶ 40–44, 130.) Accordingly, Count VII sufficiently alleges a cause of action for tortious interference and Defendants' Motion will be denied as it relates to Count VII.

### G. Claims Against Mr. Figa.

Defendants claim that Plaintiffs' claims against Mr. Figa must be dismissed because they attempt to establish individual liability of a corporate officer. However, Plaintiffs' Complaint is not so narrow—it includes claims against Mr. Figa independent of any corporate structure. Plaintiffs allege that "Defendant Yakov Meyer Figa is a natural person who resides in Brooklyn, New York and operates under the seller name "GoGreen 2017 LLC" f/k/a "Hashem Yazor" and "Ocean View Marketing" on Amazon." (Compl. at ¶ 4.) The Complaint then asserts that Mr. Figa's actions form the allegations outlined in Counts I–VII.

The Federal Rules of Civil Procedure expressly permit alternative pleading. *See* Fed. R. Civ. P. 8(d). This form of pleading has been accepted in the sense that parties may pursue both

inconsistent legal theories and inconsistent factual theories. *See* 5 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1282 (3d ed. 2010) (collecting authority). But Rule 8's permission to pursue alternative legal and factual theories is not unlimited. When a person files a pleading in federal court, that person makes a representation that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions [in the pleading] have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Therefore, read jointly, Rules 8 and 11 only permit the pleading of alternative factual theories if counsel, after conducting an adequate investigation, is unable to determine the true facts. As the former-Fifth Circuit noted, inconsistent pleading is permitted when the pleader's doubt is "honest." *Banco Cont'l v. Curtiss Nat'l Bank of Miami*, 406 F.2d 510, 513 (5th Cir. 1969).

Here, the Complaint asserts that either Defendant OVM LLC or Defendant Yakov Meyer Figa operates under the seller name "GoGreen 2017 LLC" f/k/a "Hashem Yazor" and "Ocean View Marketing" on Amazon." (Compl. at ¶ 3–4.) Therefore, according to the Complaint, Plaintiff's allegations against Mr. Figa would survive if discovery shows that Defendant OVM LLC, in fact, does not operate the storefront selling the products at issue. Thus, the claims are asserted against Mr. Figa in his individual capacity, not in his capacity as a corporate officer.[2] Accordingly, Defendants' argument regarding the claims against Mr. Figa is unavailing and the Motion is denied in that regard.

---

[2] Even if the claims were limited to Mr. Figa's actions in his capacity as a corporate officer, the Complaint sufficiently alleges that Mr. Figa "directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, [and therefore] is personally liable for such infringement without regard to piercing of the corporate veil." *Babbit Elecs. v. Dynascan Corp.*, 828 F. Supp. 944, 960 (S.D. Fla. 1993), aff'd, 38 F.3d 1161 (11th Cir. 1994); *see also Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1478 n.8 (11th Cir. 1991) ("The individual liability standard does not ask whether the individual participated or engaged in some infringing act; instead, it asks whether he actively participated as a moving force in the decision to engage in the infringing acts, or otherwise caused the infringement as a whole to occur."). According to the Complaint, Mr. Figa was a moving force in causing the infringement as a whole to occur. Therefore, the Motion would be denied in that regard.

16

### H. Shotgun Pleading.

Defendants also seek dismissal of the Complaint as a "shotgun pleading." (Mot. at 15.) "Shotgun pleadings," which have been described as being "calculated to confuse the 'enemy,' and the court," by leaving it unclear "which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted." *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). The most common type of shotgun pleading is one in which "each count incorporated by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged were not material to the claim." *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 650 n.22 (11th Cir. 2010) (Tjoflat, J. concurring in the appeal, and dissenting in the cross-appeal).

In the *Weiland* case, the Eleventh Circuit found that while many of the counts were not considered "a model of efficiency or specificity, [the counts did] adequately put [the defendants] on notice of the specific claims against them that support those claims." *Id.* at 1325. The Court stated that "[a] dismissal under Rules 8(a)(2) and 10(b) is appropriate where 'it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief.'" *Id.* (internal citations omitted.) Thus, the ultimate question for a court considering a motion to dismiss is whether a plaintiff has put a defendant on notice of its claims.

Here, it is not virtually impossible to know which allegations of fact are intended to support which claims for relief. In fact, the "Factual Allegations" section of the Complaint contains subheadings that relate to specific Counts of the Complaint, making it clear that those allegations correlate to a specific Count. (*See, e.g.*, Compl. at 8.) Defendants should be able to understand the allegations of the Complaint—as is evidenced by Defendants' substantive engagement with the Complaint in its Motion—and Defendants have been adequately put on

notice of Plaintiffs' claims. Accordingly, Defendants' Motion is denied to the extent that it requests the Court to dismiss the Complaint as a shotgun pleading.

### IV. CONCLUSION

Accordingly, the Court **grants in part** the Defendants' Motion to Dismiss [D.E. No. 15]. The Court dismisses without prejudice Counts I-VI of the Complaint. The Plaintiffs must file their amended complaint on or before February 28, 2018.

DONE and ORDERED in Chambers, Miami, Florida, on February 15, 2017.

_____
Paul C. Huck
United States District Judge

**Copies furnished to:**
All Counsel of Record