# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION

### Case No. 17-CV-62107-HUCK

| | |
|---|---|
| NUTRANEXT, LLC, and RAINBOW LIGHT NUTRITIONAL SYSTEMS, LLC, | : |
| | : |
| | : FIRST AMENDED COMPLAINT |
| Plaintiffs, | : FOR DAMAGES, INJUNCTIVE AND |
| v. | : OTHER RELIEF FOR VIOLATIONS |
| | : OF 15 U.S.C. § 1114; 15 U.S.C. |
| OVM LLC, YAKOV MEYER FIGA, and | : § 1125(a); 15 U.S.C. § 1125(c); FLA. |
| JOHN DOES 1-100, individually or as | : STAT. § 501.204; TORTIOUS |
| corporate/business entities, | : INTERFERENCE;AND RELATED |
| | : CLAIMS; AND JURY DEMAND |
| Defendants. | : |
| | : |
| _____/ | : |

Plaintiffs Nutranext, LLC f/k/a Wellnext LLC ("Nutranext") and Rainbow Light Nutritional Systems, LLC ("Rainbow Light") (collectively, "Plaintiffs") bring this action against Defendants OVM LLC ("OVM"), Yakov Meyer Figa ("Figa"), and John Does 1-100 ("Doe Defendants") (collectively, "Defendants") for trademark infringement in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 1125, trademark counterfeiting in violation of the Lanham Act, 15 U.S.C. § 1114, false advertising and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c), common law trademark infringement, violation of the Florida Unfair and Deceptive Trade Practices Act, Fla. Stat. § 501.204, and tortious interference with contract and business relations, and allege as follows. These claims arise from Defendants' misappropriation of Plaintiffs' trademarks in conjunction with Defendants' unlawful and unauthorized sale of Rainbow Light®-brand products on the Internet, including the sale of non-genuine, defective, and tampered with products bearing the Rainbow Light trademark.

## PARTIES, JURISDICTION, AND VENUE

1.     Nutranext is a limited liability company, organized under the laws of the State of Delaware, with its principal place of business located in Sunrise, Florida.

2.     Rainbow Light is a limited liability company, organized under the laws of the State of Delaware, with its principal place of business located in Sunrise, Florida.

3.     Upon information and belief, OVM is a limited liability company, organized under the laws of the State of New York, with its principal place of business located in Brooklyn, New York.  OVM was registered with the New York Secretary State on March 14, 2016.  OVM conducts business throughout the United States through a storefront on www.amazon.com ("Amazon") called "Ocean View Marketing" f/k/a "Hashem Yazor" and "GoGreen 2017 LLC."

4.     Upon information and belief, Figa is a natural person who resides in Brooklyn, New York and who conducts business throughout the United States through a storefront on Amazon called "Ocean View Marketing" f/k/a "Hashem Yazor" and "GoGreen 2017 LLC."  Upon information and belief, Figa directs, controls, ratifies, participates in, and is the moving force behind the unlawful activity alleged herein.

5.     The true names, involvement, and capacities, whether individual, corporate, associated or otherwise of the Doe Defendants are unknown to Plaintiffs.  Therefore, Plaintiffs sue these Defendants by a fictitious name.  Plaintiffs are informed and believe, and on that basis allege, that the Doe Defendants sued herein are equally responsible for the events and occurrences referred to herein or otherwise interested in the outcome of the dispute.  When the true names, involvement, and capacities of these parties are ascertained, Plaintiffs will seek leave to amend this Complaint accordingly.

6.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 28 U.S.C. § 1338 for Plaintiffs' claims that arise under federal law and 28 U.S.C.

§ 1367 for Plaintiffs' claims that arise under state law because they form part of the same case or controversy as Plaintiffs' claims that arise under federal law.

7.      Defendants are subject to the Court's personal jurisdiction pursuant to Fla. Stat. § 48.193(1)(a)(2) because they committed tortious acts within the State of Florida.

8.      Defendants are subject to the Court's personal jurisdiction pursuant to Fla. Stat. § 48.193(1)(a)(1) because they operated, conducted, engaged in, or carried on a business or business venture in the State of Florida, or have an office or agency in the State of Florida.

9.      Defendants are subject to the Court's personal jurisdiction pursuant to Fla. Stat. § 48.193(1)(a)(6) because they caused injury to persons within the State of Florida through acts or omissions outside the State of Florida and, at or about the time of the injury, (a) they were engaged in solicitation or service activities within the State of Florida, and (b) products, materials, or things processed, serviced, or manufactured by Defendants were used or consumed within the State of Florida in the ordinary course of commerce, trade, or use.

10.     Defendants are subject to the Court's personal jurisdiction pursuant to Fla. Stat. § 48.193(2) because they engaged in substantial and not isolated activity within the State of Florida.

11.     This Court has personal jurisdiction under the Due Process Clause because Defendants have sufficient minimum contacts with the State of Florida and have purposefully availed themselves of the privilege of conducting activities and causing a consequence in the State of Florida by, among other things, advertising and selling infringing products to consumers within Florida through one or more highly interactive commercial websites.

12.     Venue is properly founded in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred

3

within this judicial district or, in the alternative, because a Defendant is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

### Nutranext And The Rainbow Light Trademarks

13.    Nutranext develops, manufactures, markets, and sells high quality dietary and nutritional supplements, including products under the Rainbow Light® brand ("Rainbow Light Products"). Nutranext sells Rainbow Light Products exclusively through a network of authorized resellers ("Authorized Resellers").

14.    Nutranext devotes a significant amount of time, energy, and resources toward protecting the value of the Rainbow Light brand, products, name, and reputation. By distributing Rainbow Light Products exclusively through Authorized Resellers, Nutranext ensures that customers receive the high quality products that they expect from Nutranext and that they receive the full suite of customer support that accompanies genuine Rainbow Light Products. In the highly competitive supplements industry, quality and customer support are a fundamental part of a customer's decision to purchase a product.

15.    To promote and protect the Rainbow Light brand, Rainbow Light has registered numerous trademarks with the United States Patent and Trademark Office, including, but not limited to: RAINBOW LIGHT® (U.S. Trademark Registration No. 4,548,927), NUTRI STARS® (U.S. Trademark Registration No. 1,772,172), JUST ONCE® (U.S. Trademark Registration No. 2,130,550), BEAR ESSENTIALS® (U.S. Trademark Registration 2,598,723), and GUMMY POWER SOURS® (U.S. Trademark Registration No. 3,367,183) (collectively, the "Rainbow Light Trademarks").

16.    Rainbow Light owns the Rainbow Light Trademarks and has licensed them to Nutranext.

17.     The registration for each of the Rainbow Light Trademarks is valid, subsisting and in full force and effect. Pursuant to 15 U.S.C. § 1065, the Rainbow Light Trademarks serve as conclusive evidence of  Rainbow Light's ownership of the marks and of Plaintiffs' exclusive right to use and direct the use of the marks in commerce and in connection with the sale and distribution of the Rainbow Light Products identified in the registrations, as provided by 15 U.S.C. § 1115(b).

18.     Rainbow Light was founded in 1981.  For over 30 years, it has been recognized by consumers as the source for natural, food-based supplements that make a difference in their health and well-being, while promoting sustainable practices for planetary health and contributing to the fight against global malnutrition.

19.     Rainbow Light filed the RAINBOW LIGHT® trademark on March 17, 1993, and it was registered on August 31, 1993.  Plaintiffs have actively used and marketed products under the RAINBOW LIGHT® trademark since that time.

20.     Nutranext actively uses and markets all of the Rainbow Light Trademarks in interstate commerce throughout the United States.

21.     Consumers recognize the Rainbow Light Trademarks as being associated with healthy, nutritional, food-based supplements grounded in the power of nature.

22.     Consumers also recognize Rainbow Light as the pioneer of food-based nutritional supplements and one of the first companies to provide a food-grown product – a specific process of creating a food-like substance.

23.     Consumers identify Rainbow Light as offering fresh new choices of effective nutritional products for every age, life stage, and health concern.

24.     Rainbow Light is known by consumers for using certified organic, non-GMO spirulina as the primary food base in its supplements, which is exceptionally easy to digest.

25.     The Rainbow Light name is recognized by consumers for its innovative formulas that include clinically researched ingredients, which are formulated based on the latest nutritional science to ensure appropriate potencies and optimal combinations for absorption, utility and effectiveness.

26.     Because of the effectiveness of its products and longevity of the use of the Rainbow Light name, consumers trust the Rainbow Light name and Rainbow Light Products.

27.     In 2014, Rainbow Light earned the reputation as the #1 Most Trusted Natural Vitamin Brand, according to a study by Wiest & Co.

28.     For all of these reasons, the Rainbow Light Trademarks are widely recognized by the general public of the United States and Nutranext is widely recognized as the source of products bearing the Rainbow Light Trademarks.

29.     Due to the superior quality and exclusive distribution of Rainbow Light Products, and because Nutranext is uniquely recognized as the source of these high quality products, the Rainbow Light Trademarks have substantial value.

### Online Marketplaces And The Challenges They Present To Rainbow Light Product Quality

30.     E-commerce retail sales have exploded over the past decade.  From 2007 to 2017, the percentage of total retail sales in the United States that were completed through e-commerce channels rose from 3.1% to 8.2%.  *See* https://www.digitalcommerce360.com/2017/02/17/us-e-commerce-sales-grow-156-2016/; https://fred.stlouisfed.org/series/ECOMPCTSA.

31.     In 2016, consumers spent $394.86 billion on e-commerce sales, a 15.6% increase from 2015.  *Id.*  The massive growth in e-commerce is being driven largely by sales on online marketplaces.  For example, in 2016 United States consumers spent $147.0 billion in e-commerce sales on Amazon, a 31.3% increase from 2015.  *Id.*

6

32.     While the online marketplaces have created a great deal of opportunity, they also greatly challenge a manufacturer's ability to control the quality and safety of its products.

33.     For example, consumers who purchase products through the online marketplaces cannot touch, inspect, or interact with the product before purchasing it and cannot select a different product if the one they initially select is damaged or has been tampered with.  Instead, consumers must trust that the product they choose over the Internet will arrive and be of the quality they expect and typically receive from the manufacturer.

34.     The online marketplaces also allow third parties to sell products anonymously, i.e., without disclosing their actual identity or sources to consumers.  As such, any person who is able to obtain a manufacturer's products through unauthorized diversion can sell them on the online marketplaces without having to reveal his/her identity to the consuming public.  This effectively prevents the manufacturer and the consumer from being able to reach sellers, like Defendants, and address quality concerns.

35.     It is common for these unauthorized sellers to sell diverted products well past their expiration date or to mix fake or diluted products in shipments to unwitting consumers.  *See* https://www.cnbc.com/2016/09/08/greed-report-your-quest-for-savings-could-land-you-in-the-gray-market.html.  Indeed, there is an "epidemic" of counterfeit products being sold on the online marketplaces that diverters are exploiting because they know consumers trust marketplaces and assume that the products they are buying through the marketplaces are genuine.  *See* https://www.bloomberg.com/news/articles/2016-11-28/amazon-gets-real-about-fakes.

36.     Because diverters, like Defendants, operate anonymously on marketplaces and undertake great measures to maintain anonymity, manufacturers have no ability to exercise their quality controls over the products sold by the diverters or to ensure that these products are safe.  A

manufacturer's inability to exercise control over the quality of its products presents serious risks to the health and safety of consumers – particularly where, as here, the products are ingested by consumers.

37.     Online marketplaces also pose threats to a manufacturer's ability to maintain its goodwill, reputation, and brand integrity because their construction and user interface suggest that all sellers on the marketplaces are all selling the same product when – as is the case here – they are not.

38.     When purchasing products on a marketplace, customers cannot easily distinguish between a manufacturer's authorized and unauthorized sellers.  Indeed, on some marketplaces all sellers are listed under one product listing, making it practically impossible for consumers to ascertain which sellers are authorized and subject to the brand's quality standards and which are selling unauthorized products outside of the manufacturer's quality controls.  Unlike brick-and-mortar channels where a consumer can simply select another product from the shelf where the initial product selected appears to be of compromised quality, e-commerce consumers are left simply having to hope that the product that shows up on their doorstep is of appropriate quality. This reality requires that brands implement unique quality control programs into their e-commerce channels to protect their goodwill and consumers.

39.     It is widely understood that when a customer purchases a product on an online marketplace and receives a damaged, defective, expired, or poor quality product, the customer is much more likely to associate that problem with the brand/manufacturer than the anonymous seller.

40.     The online marketplaces give disgruntled customers a powerful and convenient forum to air their grievances about problem products – online product reviews.  Any consumer

who is dissatisfied with a product he/she receives can post a review on the marketplace for all other consumers across the world to see.  These reviews, which are often permanently fixed, will often criticize the brand/manufacturer of a product rather than the marketplace seller that sold the product.

41.     It is widely accepted that, product reviews on the online marketplaces have a significant impact on a brand's reputation.  Survey results show that 82% of United States adults sometimes consult online reviews for information when they consider buying a new product online and 40% "always" or "almost always" consult such reviews.  *See* http://www.pew internet.org/2016/12/19/online-reviews/.

42.     Consumers place extraordinary trust in these online reviews.  Indeed, consumers are over 10 times more likely to rely on consumer-generated product reviews than product descriptions written by manufacturers.  *See* https://www.emarketer.com/Article/Moms-Place-Trust-Other-Consumers/1007509.

43.     Because of the reliance consumers place on online reviews, negative online reviews can be the death knell for a manufacturer's online product listings.  According to one study, merely three negative online reviews will deter a majority (67%) of online consumers from purchasing a particular product.  *See* https://econsultancy.com/blog/7403-how-many-bad-reviews-does-it-take-to-deter-shoppers.

**Plaintiffs Have Been The Target Of Multiple Negative Online Marketplace Reviews
From Customers Who Purchased Products Bearing The Rainbow Light Trademarks
From Unauthorized Sellers Like Defendants**

44.     Plaintiffs have been a victim of the issues caused by unauthorized sellers on the online marketplaces, like Defendants, and have been the subject of negative online marketplace reviews.

45.     At least two of these complaints have occurred as a result of a non-genuine Rainbow Light product sold by Defendants.  On February 22, 2018, a customer complained that Defendants sold her a defective Rainbow Light product with a broken seal: "The bottle arrived with the safety seal broken. The supplement amounts are also different than the previous Rainbow Light - Prenatal One Multivitamins I've purchased at my local co-op.  I have requested a refund and will not purchase from this seller again."

★☆☆☆☆ *"The bottle arrived with the safety seal broken. The supplement amounts are also different than the previous Rainbow Light - Prenatal One Multivitamins I've purchased at my local co-op. I have requested a refund and will not purchase from this seller again. "*
Read less

By Amazon Customer on February 22, 2018.

46.     On February 24, 2018, another Amazon customer complained that Defendants sold her a counterfeit Rainbow Light product:  "Prenatal One vitamin was a counterfeit and seller does not allow refunds.  Had to contact Amazon for a refund and alter them of the issue.  Beware of this seller."

★☆☆☆☆ *"Prenatal One vitamin was a counterfeit and seller does not allow refunds. Had to contact Amazon for a refund and alert them of the issue. Beware this seller. "*

By Amazon Customer on February 24, 2018.

47.     Other consumers have made similar complaints about the Rainbow Light products they received from unauthorized sellers, like Defendants, through the online marketplaces.  The following are just a few examples of the types of complaints that have been made.

48.     On March 31, 2016, a customer complained that he received a product with a broken seal: "Seal was broken upon opening, Past date to return."



49.     On August 21, 2016, another customer, Ia Rodami, complained that he received an

expired product: "I ordered this item just recently and guess what the expiration date in now in

august 2016.  I leave overseas and I could not return the item , therefore watch out for the date on

the bottle."



50.     On February 3, 2018, another customer, Todd M., complained that he received a

product with a broken seal: "Got this item and the seal was broken and it says it is non returnable."



51.     On February 5, 2018, another customer, robert d krieder ii, complained that he

received a product that had been tampered with: "I've always purchased this brand from amazon

the past few years.  Great multi vitamin.  However, this recent order, the bottle was tampered with.

The safety seal was broken in to.  There was half the ordered (120 ct) amount of tablets in the

bottle.  No Bueno.  Not safe.  Very disappointing."

⭐☆☆☆☆ | **Bottle was tampered with. Broken seal. Half of the total tablets were in bottle.**
By robert d kreider ii on February 5, 2018
Size: 120 Tablets | **Verified Purchase**
I've always purchased this brand from amazon the past few years. Great multi vitamin. However, this recent order, the bottle was tampered with. The safety seal was broken in to. There was half the ordered (120 ct) amount of tablets in the bottle.
No bueno. Not safe. Very disappointing.



52.     At least two of the foregoing complaints were made in response to tampered-with or counterfeit products purchased from Defendants.  Upon information and belief, some of the other complaints referenced above, as well as other consumer complaints, were also made in response to products purchased from Defendants.

**Nutranext Has Implemented Quality Controls To Combat The Problems Caused By Unauthorized Online Sellers And Protect The Value Of The Rainbow Light Trademarks**

53.     Recognizing the health and safety risks to its consumers and the reputational concerns associated with the illegal sale of Rainbow Light Products by unauthorized sellers like Defendants who do not abide by Rainbow Light's quality controls and peddle poor quality products to unsuspecting consumers, Nutranext has implemented a quality control program that applies to both brick and mortar retail settings and online sellers with the twin aims of protecting consumers and protecting the value and goodwill associated with the Rainbow Light brand.

54.     The goal of Nutranext's quality control program is to ensure that consumers who buy Rainbow Light Products online receive products that feature all of the special characteristics that consumers have come to expect from products sold under the Rainbow Light name – in particular, safety and quality.

55.     The program seeks to minimize the likelihood that poor-quality products will reach consumers.  By preventing consumers from receiving poor-quality products, the program both

protects consumers from confusion and unsafe products and also protects the value and goodwill associated with the Rainbow Light brand.

56.     Nutranext abides by its quality control requirements.  Further, as discussed below, Nutranext requires its Authorized Resellers to abide by the quality control requirements and audits its Authorized Resellers to ensure they abide by its quality controls.

57.     Nutranext's ability to exercise these quality controls is particularly important for the products it sells because consumers ingest the products and there are numerous health and safety risks associated with consumers ingesting products that are expired or that have not been properly stored or handled.

58.     Nutranext's ability to exercise its quality controls is essential to the integrity, safety, and quality of Rainbow Light Products, as well as the value of the Rainbow Light Trademarks and other intellectual property.

### Authorized Resellers Are Required To Adhere To Nutranext's Quality Control And Customer Service Requirements

59.     Nutranext maintains its strict quality control over Rainbow Light Products by conducting all sales through its Authorized Resellers.

60.     Authorized Resellers are permitted to sell Rainbow Light Products only in approved channels and are required to abide by Nutranext's Authorized Reseller Policy and other rules (collectively, the "Nutranext Rules").

61.     To prevent third parties from acquiring and reselling Rainbow Light Products outside of Nutranext's quality control program, the Nutranext Rules allow Authorized Resellers to sell products only to end users.  Authorized Resellers are prohibited from selling Rainbow Light Products to anyone who intends to resell the products.

13

62.     Authorized Resellers are also prohibited from selling Rainbow Light Products on any third-party marketplaces such as Amazon, eBay, Walmart Marketplace, or Craigslist, without prior written consent of Nutranext.

63.     These restrictions allow Nutranext to know who its Authorized Resellers are, which ones are selling online, and how to immediately contact them in the event of any product quality issues.

64.     The Nutranext Rules also require Authorized Resellers to adhere to Nutranext's quality control requirements.

65.     To ensure that customers receive the genuine and high-quality products they expect from Rainbow Light Products, the Nutranext Rules require that Authorized Resellers inspect all products for damage, defects, evidence of tampering, and other non-conformance and remove all such products from inventory. Further, to assist Nutranext in identifying any product quality issues, Authorized Resellers are required to report any defects to Nutranext.  To prevent the sale of expired products, Authorized Resellers are also required to inspect inventory for expired or soon-to-be expired products and to remove those products from inventory.

66.     The Nutranext Rules also require that Authorized Resellers store products in accordance with guidelines issued by Nutranext. Importantly, for the health and safety of consumers, Authorized Resellers must store products in a cool, dry place, away from direct sunlight, and accordance with cGMPs, applicable laws, rules and regulations, and any other storage guidelines.

67.     To avoid consumer confusion and ensure that customers receive genuine Rainbow Light Products, Authorized Resellers are prohibited from relabeling, repackaging, or altering Rainbow Light Products.  Authorized Resellers are also prohibited from removing, translating, or

14

modifying the contents of any label or literature on or accompanying Rainbow Light Products. Further, Authorized Resellers are prohibited from tampering with, defacing, or otherwise altering any identifying information on Rainbow Light Products, including lot codes, batch codes, and UPCs.

68.     Nutranext also ensures that consumers receive safe products by requiring that Authorized Resellers assist with recalls and other consumer safety information efforts.

69.     The Nutranext Rules also require that Authorized Resellers provide certain services to their customers.  Authorized Resellers must familiarize themselves with the features of all Rainbow Light Products kept in their inventory.  This requirement ensures that Authorized Resellers are uniquely qualified not only to recommend the Rainbow Light Products best suited for end-user consumers' needs and well-being, but also to advise end-user consumers on how to use Rainbow Light Products safely and properly.

70.     Following the sale of genuine Rainbow Light Products, Authorized Resellers provide ongoing support to end-user consumers and are required to provide expeditious customer service by responding promptly to consumer inquiries.

71.     Nutranext's quality control requirements are legitimate, substantial, and non-pretextual and have been implemented so that Nutranext can control the quality of goods manufactured and sold under the Rainbow Light Trademarks, which protects consumers and the value and goodwill associated with the Rainbow Light Trademarks.

72.     Nutranext's quality control requirements are also material, as they are designed to protect consumers and prevent them from receiving poor quality products that could harm them. These quality controls are particularly important for Rainbow Light Products because they are ingested by consumers.

73.     Consumers would find it material and relevant to their purchasing decision to know whether a Rainbow Light Product they were considering buying was being sold by an Authorized Reseller who is subject to Nutranext's quality control requirements or whether it is being sold by an unauthorized seller who is not subject to and does not abide by Nutranext's quality controls and over whom Nutranext is unable to exercise its quality controls.

### Given The Flood Of Poor Quality Products On The Marketplaces And Consumers' Inability to Inspect Products, Nutranext Imposes Additional Requirements On Its Authorized Resellers Who Sell On The Marketplaces

74.     Given the many unscrupulous resellers, like Defendants, selling products on marketplaces today, any party wishing to sell Nutranext products on the marketplaces must first be vetted and approved by Nutranext to be an authorized online marketplace reseller ("Authorized Online Marketplace Resellers").  Authorized Online Marketplace Resellers may sell Rainbow Light Products only on marketplace websites that Rainbow Light Products has specifically approved, which again allows Nutranext to have full visibility and oversight over those parties authorized to sell its products online.

75.     Authorized Online Marketplace Resellers are vetted by Nutranext to ensure that they meet Nutranext's criteria and that they will properly represent the Rainbow Light brand.

76.     Critical to Nutranext's ability to exercise its quality controls over products sold in the online marketplaces is that Nutranext must know what marketplaces its Authorized Online Marketplace Resellers are selling on and under what storefront names.  Accordingly, unless otherwise approved by Nutranext, Authorized Online Marketplace Resellers are prohibited from selling anonymously and must clearly state their business name and current contact information on all websites where they sell.  This requirement allows Nutranext to verify its Authorized Online Marketplace Resellers and to immediately address any quality issues or negative reviews that arise.

77.     Furthermore, to be approved by Nutranext, Authorized Online Marketplace Resellers must have an appropriately registered and recognized business that meets applicable criteria (i.e. credit, sales history, facility requirements).

78.     Authorized Online Marketplace Resellers must also have an acceptable online review history, without a significant presence of negative product or seller reviews.

79.     Authorized Online Marketplace Resellers must also have an acceptable business operating record, which includes evaluating, among other things, any lawsuits, complaints, or actions related to the delivery of damaged products, misrepresented products, poor-quality products, or other similar issues.

80.     In addition to complying with the quality controls and customer service requirements discussed above, Authorized Online Marketplace Resellers must also adhere to several additional requirements.

81.     Authorized Online Marketplace Resellers must comply with all applicable data security, accessibility, and privacy requirements.

82.     Authorized Online Marketplace Resellers must agree not to represent or advertise any product as "new" that has been returned or repackaged.  Typically, if a customer returns a product that was purchased through a marketplace, the marketplace will repackage the product and allow it to be relisted as new.  Nutranext prohibits its Authorized Online Marketplaces Resellers from allowing this to occur in order to ensure that customers receive the high quality Rainbow Light Products they expect.

83.     Unless otherwise approved by Nutranext, Authorized Online Marketplace Resellers must agree to not fulfill orders in any way that results in the shipped product not coming from

product stock in the Authorized Online Marketplace Resellers' possession.  Nutranext must review and approve any use of third-party fulfillment services.

84.    Authorized Online Marketplace Resellers must also cooperate with any product tracking Nutranext implements or utilizes.

85.    Authorized Online Marketplace Resellers must have a mechanism for soliciting customer feedback/reviews and must take appropriate steps to address that feedback.  Authorized Online Marketplace Resellers must also cooperate with Nutranext in investigating any negative product reviews.   Again, this is a critical component of Nutranext's quality control program because it allows Nutranext to quickly address quality issues that arise, which it is unable to do for products sold by unauthorized sellers like Defendants.

86.    Authorized Online Marketplace Resellers who sell on Amazon must also maintain a certain seller feedback score.

87.    Authorized Online Marketplace Resellers who sell on Amazon must prevent the commingling of their Rainbow Light Products with the products of other sellers in Amazon warehouses and must prevent orders from being fulfilled in any way that potentially results in delivery to the consumer of a product from another seller's stock.  This requirement is crucial to ensuring that consumers who purchase products through Authorized Online Marketplace Resellers receive genuine Rainbow Light Products.   Most sellers who store products in Amazon's warehouses allow their products to be commingled with other sellers' inventory.  As such, when a consumer purchases a product through a particular storefront, the consumer could receive a product that came from the inventory of a number of different sellers, including a product that is counterfeit or fake.  Nutranext's anti-commingling quality control requirement prevents this from happening and ensures that the Rainbow Light Products that are sold by its Authorized Online

Marketplace Resellers are products that were distributed through Nutranext's authorized channels and comply with Nutranext's quality controls.

88.     To further its efforts and ability to assure product quality and adherence to its quality control standards, protect the value and goodwill associated with the Rainbow Light brand, and to prevent consumer confusion, Nutranext has approved only two Authorized Online Marketplace Resellers on the Amazon Marketplace.  This limitation allows Nutranext to closely monitor seller and product reviews and to promptly address any product quality issues directly with its approved sellers.  This limitation also helps prevent the confusion that exists when consumers are presented with many marketplace sellers and are unable to discern which sellers are authorized and which are selling products that are subject to and protected by Nutranext's quality controls.

89.     The additional quality control requirements that Nutranext imposes on its Authorized Online Marketplace Sellers are legitimate, substantial, and non-pretextual and have been implemented to allow Nutranext to control the quality of Rainbow Light Products that are sold on the online marketplaces and quickly address any quality issues that arise.

90.     These quality controls are also material, as they have been implemented to ensure that consumers purchasing Rainbow Light Products on the online marketplaces receive genuine, high-quality Rainbow Light Products that abide by Nutranext's quality controls.  Consumers purchasing Rainbow Light Products on the online marketplaces would find it relevant to their purchasing decision to know whether the product they are purchasing is being purchased from an Authorized Online Marketplace Seller and is subject to and abides by Nutranext's quality controls.

**Nutranext Polices The Sale Of Rainbow Light Products Online And Ensures That Its Authorized Online Marketplace Resellers Comply With Its Quality Control Requirements**

91.     In order to ensure that its Authorized Online Marketplace Resellers adhere to Nutranext's quality control requirements, Nutranext regularly monitors sales of its products on the online marketplaces.

92.     Pursuant to this program, Nutranext monitors Authorized Online Marketplace Resellers and online product and seller reviews, is able to conduct test purchases and perform inspections, and confirms Authorized Online Marketplace Resellers' compliance with all of its quality control and Authorized Online Marketplace Reseller requirements.

93.     Nutranext is further able to communicate with its Authorized Online Marketplace Resellers to understand the nature of any product quality issues or negative reviews and to facilitate appropriate follow-on action items.

94.     Nutranext is also able to discipline Authorized Online Marketplace Resellers that fail to comply with its quality control requirements.

**Defendants Are Not Authorized Resellers Or Authorized Online Marketplace Resellers And Are Illegally Selling Products Bearing The Rainbow Light Trademarks**

95.     In the course of monitoring online listings of Rainbow Light Products, Nutranext discovered products bearing the Rainbow Light Trademarks being illegally sold by Defendants on Amazon under the storefront name "Ocean View Marketing" f/k/a "Hashem Yazor" and "GoGreen 2017 LLC" (the "Ocean View Marketing Storefront").

96.     Upon information and belief, Defendants created the Ocean View Marketing Storefront in late 2016 or 2017, and began selling products bearing the Rainbow Light Trademarks through the storefront in 2017.

97.     Defendants are not Authorized Resellers of Rainbow Light Products and do not comply with Nutranext's Authorized Reseller requirements or the Nutranext Rules.

98.     Defendants are also not Authorized Online Marketplace Resellers of Rainbow Light Products and do not comply with Nutranext's Authorized Online Marketplace Reseller requirements.

99.     Defendants have not applied to be Authorized Online Marketplace Resellers of Rainbow Light Products.

100.    Nutranext has not approved Defendants to be Authorized Online Marketplace Resellers of Rainbow Light Products.

101.    In fact, Defendants could not be approved as an Authorized Online Marketplace Reseller because they do not comply with Nutranext's requirements.

102.    Upon information and belief, Defendants' business does not satisfy the credit, sales, history, and facility requirements that Nutranext requires of its Authorized Online Marketplace Resellers.

103.    Defendants also do not have an acceptable online review history or business operating record.  As set forth below, multiple consumers have complained about the products Defendants sold to them and that Defendants are selling fake, counterfeit, and poor quality products.

104.    Despite not being approved as Authorized Resellers or Authorized Online Marketplace Resellers, Defendants have sold, and continue to sell, products bearing the Rainbow Light trademark on the Ocean View Marketing Storefront.

**Defendants Are Selling Fake, Counterfeit, And Poor Quality Rainbow Light Products Through The Ocean View Marketing Storefront**

105.    Defendants do not abide by Nutranext's quality control requirements.  As a result, the Rainbow Light products they sell are non-genuine and infringing.

106.    Numerous consumers have posted negative reviews about the products that Defendants sold them through the Ocean View Marketing Storefront, including products bearing the Rainbow Light Trademarks.

107.    In fact, as recently as February 24, 2018, an Amazon customer complained that Defendants sold her a counterfeit Rainbow Light product:  "Prenatal One vitamin was a counterfeit and seller does not allow refunds.  Had to contact Amazon for a refund and alter them of the issue. Beware of this seller."

⭐☆☆☆☆   *"Prenatal One vitamin was a counterfeit and seller does not allow refunds. Had to contact Amazon for a refund and alert them of the issue. Beware this seller.*"

By Amazon Customer on February 24, 2018.

108.    On February 22, 2018, another customer complained that Defendants sold her a defective Rainbow Light product with a broken seal: "The bottle arrived with the safety seal broken. The supplement amounts are also different than the previous Rainbow Light - Prenatal One Multivitamins I've purchased at my local co-op. I have requested a refund and will not purchase from this seller again."

⭐☆☆☆☆   *"The bottle arrived with the safety seal broken. The supplement amounts are also different than the previous Rainbow Light - Prenatal One Multivitamins I've purchased at my local co-op. I have requested a refund and will not purchase from this seller again.*"
Read less

By Amazon Customer on February 22, 2018.

109.    In just the past month, additional consumers have complained that Defendants sold them products were fake, counterfeit, and/or tampered-with.

110.    For example, on February 1, 2018, a customer, Noel, complained that he received the wrong product: "Do not order with this seller.  They sent me a different vitamin than the one pictured."

22

*"Do not order with this seller. They sent me a different vitamin than the one pictured."*

By Noel on February 1, 2018.

111.    On February 3, 2018, a customer complained that he received a fraudulent item: "I received the wrong item.  Suspected to be a fraudulent item.  Missing: Trade mark, manufacturer, proper seal type, and a [sic] additional scrap seal on package."

*"I received the wrong item. Suspected to be a fraudulent item. Missing: Trade mark, manufacturer, proper seal type, and a additional scrap seal on package."*

By Amazon Customer on February 3, 2018.

112.    On February 15, 2018, a customer, E. Audette, complained that he received a counterfeit product: "Counterfeit fake product."

*"Counterfeit fake product."*

By E. Audette on February 15, 2018.

113.    On February 16, 2018, a customer, Ross, complained that he received a fake product: "Fake product.  Label and ingredients are different than pictured on Amazon.  Not soy free as advertised."

*"Fake product. Label and ingredients are different than pictured on Amazon. Not soy free as advertised."*

By Ross on February 16, 2018.

114.    On February 19, 2018, a customer, LionHead, complained that he received a defective product that was leaking: "One bottle was leaking."

*"One bottle was leaking."*

By LionHead on February 19, 2018.

115.    On February 22, 2018, a customer, Ben's mommy, complained that she received a counterfeit product: "TThis [sic] is a counterfeit product.  The product I received has different

packaging, it lists different amounts of vitamins on the back and it smells different than the actual product that I have been taking for years.  I am 7 months pregnant and there is no way that I would put this product in my body!  Extremely disappointed in this experience."

★☆☆☆☆   *"TThis is a counterfeit product. The product I received has different packaging, it lists different amounts of vitamins on the back and it smells different than the actual product that I have been taking for years. I am 7 months pregnant and there is no way that I would put this product in my body! Extremely disappointed in this experience. "*
Read less

By Ben's mommy on February 22, 2018.

116.     These types of complaints about Defendants are typical of the complaints made about products sold by unauthorized sellers, including the sale of counterfeit and poor quality products.

117.     At least two of the foregoing complaints about Defendants were made regarding tampered-with or counterfeit products bearing the Rainbow Light Trademarks.

118.     Upon information and belief, some of the other foregoing complaints about Defendants, including the complaints regarding their sale of counterfeit or fake products, relate to products bearing the Rainbow Light Trademarks.

119.     Based on these complaints and information and belief, Defendants knowingly and intentionally sold products bearing counterfeit reproductions of the Rainbow Light Trademarks that are identical with or substantially indistinguishable from the Rainbow Light Trademarks.

120.     Upon information and belief, additional consumers have made complaints about the quality of products Defendants sold them, but the publicly available reviews on Defendants' storefront page date back only to December 28, 2017.

121.     Upon information and belief, additional consumers have made complaints about the quality of products Defendants sold them bearing the Rainbow Light Trademarks.

24

122.   Upon information and belief, additional consumers have complained that Defendants sold them products bearing counterfeit reproductions of the Rainbow Light Trademarks that are identical with or substantially indistinguishable from the Rainbow Light Trademarks.

**Defendants Do Not Abide By Nutranext's Quality Controls**
**And Customer Service Requirements**

123.   Defendants clearly do not abide by Nutranext's quality control measures that are imposed upon genuine Nutranext products.

124.   Defendants do not comply with Nutranext's quality control requirements because they have not provided Nutranext their business information or given Nutranext an opportunity to vet them to determine if they meet Nutranext's high level of standards that they demand of their Authorized Online Marketplace Resellers.  Indeed, given Defendants' record of selling damaged and counterfeit products and being the recipient of numerous complaints, Nutranext would not authorize Defendants to sell Rainbow Light Products.

125.   Defendants do not comply with Nutranext's quality control requirements because they sell products on the Ocean View Marketing Storefront anonymously.  Defendants' storefront page does not include their business name, mailing address, or email address, and Defendants' shipments do not identify their business or provide their contact information.  In fact, as discussed further below, Defendants undertake great efforts to maintain anonymity and prevent anyone from contacting them regarding their business and the shady, poor quality products they sell to unwitting consumers.  Defendants' concerted efforts at maintaining anonymity prevents Nutranext from addressing any quality control issues or negative reviews that arise out of Defendants' sale of products bearing the Rainbow Light Trademarks, such as the complaint discussed above regarding the sale of a tampered product.

126. Defendants also do not comply with Nutranext's quality control requirements because they have not disclosed to Nutranext where they acquire products that bear the Rainbow Light Trademarks. Defendants' failure to provide such information prevents Nutranext from determining if any products Defendants are selling or have sold are subject to a recall or consumer safety information effort.

127. Defendants do not comply with Nutranext's quality control inspection requirements because they do not inspect the products they sell for damage, defects, broken seals, evidence of tampering, and other non-conformance and remove all such products from inventory. Instead, they sell products bearing the Rainbow Light Trademarks that are damaged, have broken seals, and that have been tampered with. Indeed, at least one consumer has complained that Defendants sold her a Rainbow Light product in which the safety seal had been broken:

> ⭐☆☆☆☆ "The bottle arrived with the safety seal broken. The supplement amounts are also different than the previous Rainbow Light - Prenatal One Multivitamins I've purchased at my local co-op. I have requested a refund and will not purchase from this seller again."
> Read less
> By Amazon Customer on February 22, 2018.

128. In addition, at least one other consumer complained that Defendants sold her a counterfeit Rainbow Light product.

> ⭐☆☆☆☆ "Prenatal One vitamin was a counterfeit and seller does not allow refunds. Had to contact Amazon for a refund and alert them of the issue. Beware this seller."
> By Amazon Customer on February 24, 2018.

129. Moreover, as set forth above, multiple consumers have complained that Defendants sold them products that were not properly sealed and that were tampered with. Upon information and belief, some of these complaints were made regarding purchases of products bearing the Rainbow Light Trademark.

130.    Defendants do not comply with Nutranext's quality control inspection requirements because, upon information and belief, they do not regularly inspect their inventory for expired or soon-to-be expired products and remove those products from inventory; rather, Defendants sell products bearing the Rainbow Light Trademarks that are expired or soon-to-be-expired.

131.    Defendants do not comply with Nutranext's quality control storage requirements and, upon information and belief, do not store their products in accordance with the storage guidelines specified by Nutranext.

132.    Defendants do not comply with Nutranext's quality control storage requirements because they store their products at Amazon warehouses and, upon information and belief, allow their inventory stored at Amazon's warehouses to be commingled with other sellers' inventory. Defendants' failure to comply with this quality control requirement results in their products being commingled with fake, counterfeit, and tampered with products from other sellers, and ultimately results in consumers purchasing fake, counterfeit, and tampered with products from Defendants' storefront.

133.    Defendants do not comply with Nutranext's quality control storage requirements because Amazon fulfills their orders and, upon information and belief, they allow Amazon to fulfill orders from their storefront with products that do not come from Defendants' inventory, including fake, counterfeit, and tampered with products.  Defendants' failure to comply with this quality control requirement results in unknowing consumers purchasing fake, counterfeit, and tampered with products from Defendants' storefront.

134.    Defendants do not comply with Nutranext's quality control requirements because, upon information and belief, they sell products as "new" that have been returned or repackaged. Upon information and belief, Defendants allow products that are returned to Amazon to be

repackaged and placed back in their inventory of products as "new" products.  This results in consumers, who believe they are purchasing new Rainbow Light Products, actually receiving returned products that, in some cases, have been tampered with or have had their safety seal broken.

135.    Defendants do not comply with Nutranext's quality control requirements related to the handling, packaging, and shipping of products because they sell products bearing the Rainbow Light Trademarks that have been tampered with.  As set forth above, at least one customer has complained that Defendants sold her a product bearing the Rainbow Light Trademark that had been tampered with:

⭐☆☆☆☆ "The bottle arrived with the safety seal broken. The supplement amounts are also different than the previous Rainbow Light - Prenatal One Multivitamins I've purchased at my local co-op. I have requested a refund and will not purchase from this seller again. "
Read less

By Amazon Customer on February 22, 2018.

136.    Furthermore, at least one other customer has complained that Defendants sold her a counterfeit Rainbow Light product:

⭐☆☆☆☆ "Prenatal One vitamin was a counterfeit and seller does not allow refunds. Had to contact Amazon for a refund and alert them of the issue. Beware this seller. "
By Amazon Customer on February 24, 2018.

137.    Other consumers have also complained that Defendants sold them fake and counterfeit products, products in which the seal has been broken, products that have been tampered with, and products in which the trademark was missing and scraped off.  Upon information and belief, at least some of these complaints were in response to products purchased from Defendants bearing the Rainbow Light Trademarks.

138.    Defendants' failure to abide by these quality controls also interferes with Nutranext's quality controls and prevents Nutranext from exercising control over the quality of

products Defendants sell bearing the Rainbow Light Trademarks.  Nutranext is unable to audit Defendants to ensure they are complying with Nutranext's quality controls and/or close their account if they fail to comply with Nutranext's quality control requirements.

139.    Defendants' failure to comply with these quality controls also interferes with Nutranext's quality controls because it prevents Nutranext from being able to obtain Defendants' assistance with any recall or consumer safety information efforts that may arise related to any products they are selling or have sold in the past.

140.    Defendants also do not comply with Nutranext's customer service requirements because they are not qualified or trained to accurately describe, demonstrate, and sell the products in their inventory and to advise customers on how to use Rainbow Light Products safely and properly.

141.    Defendants also do not comply with Nutranext's customer service requirements because they do not, and are unable to, provide the advice to consumers that Nutranext requires of its Authorized Resellers and do not provide the type of ongoing support and response to consumer inquiries that Nutranext requires of its Authorized Resellers.

142.    Defendants do not comply with Nutranext's customer service requirements because they do not take appropriate steps to address negative reviews from customers and do not cooperate with Nutranext in investigating negative product reviews.

**Defendants Are Infringing On The Rainbow Light Trademarks By Selling Products Bearing The Rainbow Light Trademarks That Are Not Subject To, Do Not Abide By, And Interfere With Nutranext's Quality Controls And Customer Service Requirements**

143.    For all of the reasons set forth above, the products Defendants sell bearing the Rainbow Light Trademarks fail to adhere to the extensive and legitimate quality controls that

Nutranext exercises over products bearing the Rainbow Light Trademarks to protect consumers and its brand goodwill.

144.     The products sold by Defendants are not subject to, do not abide by, and interfere with Nutranext's quality controls and customer service requirements.

145.     Because the products Defendants sell are not subject to, do not abide by, and interfere with Nutranext's quality controls and customer service requirements, the products Defendants sell are materially different from genuine Rainbow Light Products.

146.     Because the products Defendants sell are not subject to, do not abide by, and interfere with Nutranext's quality controls and customer service requirements, the products Defendants sell are not genuine Rainbow Light Products.

147.     Further, upon information and belief, Defendants have also knowingly and intentionally sold, and continue to sell, products bearing counterfeit reproductions of the Rainbow Light Trademarks that are identical with or substantially indistinguishable from the Rainbow Light Trademarks.

148.     Defendants' unauthorized sale of products bearing the Rainbow Light Trademarks is likely to, and does, create customer confusion because customers who purchase products from Defendants believe they are purchasing genuine Rainbow Light Products, when in fact they are not.

149.     Defendants' unauthorized sale of products bearing the Rainbow Light Trademarks infringes on the Rainbow Light Trademarks and diminishes their value.

150.     Despite these facts, Defendants have sold, and continue to sell, products bearing the Rainbow Light Trademarks through the Ocean View Marketing Storefront without Nutranext's consent.

151. Upon information and belief, Defendants, through their storefront, accept and fulfill orders from Florida residents for products bearing the Rainbow Light Trademarks and ship products bearing the Rainbow Light Trademarks to persons located in Florida.

**Nutranext Has Attempted To Stop Defendants' Illegal Sale Of Products Bearing
The Rainbow Light Trademarks But Defendants Continue To Willfully Infringe
On The Rainbow Light Trademarks**

152. After Nutranext discovered products bearing the Rainbow Light Trademarks being illegally sold on the Ocean View Marketing Storefront, Nutranext investigated the storefront to determine who was operating the storefront.

153. Because Defendants do not disclose their business or contact information on their storefront and sell products through the storefront anonymously, Nutranext had to spend significant time and money investigating the storefront to attempt to identify the sellers connected to the storefront.

154. Nutranext experienced difficulty in attempting to identify the sellers connected to the Ocean View Marketing Storefront and initially identified the wrong seller.

155. After spending significant time and money investigating the storefront, Nutranext identified Defendants as operating the storefront.

156. On or about September 18, 2017, counsel for Plaintiffs sent Defendants a cease and desist letter demanding that they immediately cease selling products bearing the Rainbow Light Trademarks.

157. This letter was successfully delivered, but Defendants did not respond and continued to offer products bearing the Rainbow Light Trademarks on the Ocean View Marketing Storefront.

158.     In an attempt to further disguise their operation, Defendants changed the name of their storefront after receiving the cease and desist letter, which also serves as another example of how Defendants fail to abide by and intentionally attempt to thwart Nutranext's quality controls.

159.     On or about September 28, 2017, counsel for Plaintiffs sent another letter to Defendants.  The letter attached a draft of a complaint and advised Defendants that Plaintiffs would file the complaint if Defendants did not immediately cease and desist selling products bearing the Rainbow Light Trademarks.

160.     The letter was successfully delivered to Defendants, but Defendants did not respond and continued to offer products bearing the Rainbow Light Trademarks on the Ocean View Marketing Storefront.

161.     On or about October 18, 2017, counsel for Plaintiffs sent Defendants an email stating that if they did not remove all products bearing the Rainbow Light Trademarks from their Amazon storefront by the end of the week, then Plaintiffs would file a lawsuit against OVM.

162.     Defendants did not respond to this email and they continued to offer products bearing the Rainbow Light Trademarks on the Ocean View Marketing Storefront.

163.     Plaintiffs filed this action on or about October 27, 2017.  Plaintiffs tried to serve Plaintiffs on multiple occasions, but Defendants refused to answer the door at their registered address in an attempt to evade service.

164.     Defendants were served with the Summons and Complaint on November 14, 2017.

165.     Following this service, Defendants continued to list products bearing the Rainbow Light Trademarks on the Ocean View Marketing Storefront.

166.     Counsel for Plaintiffs emailed a copy of the Summons and Complaint to Defendants on November 20, 2017, and asked Defendants to contact him to discuss the matter.

167.    Defendants did not respond and continued to sell products bearing the Rainbow Light Trademarks on their Amazon storefront.

168.    Defendants have continued to sell products bearing the Rainbow Light Trademarks on their Amazon storefront despite the pendency of this action and being informed of the unlawfulness of their conduct.

169.    Defendants have also continued to acquire and list additional products bearing the Rainbow Light Trademarks on their Amazon storefront since the commencement of this action. For example, on November 3, 2017, Defendants had only three Rainbow Light listings on the Ocean View Marketing Storefront.  On February 1, 2018, Defendants had 20 Rainbow Light listings on the Ocean View Marketing Storefront.

170.    Upon information and belief, Defendants have sold tens of thousands of products bearing the Rainbow Light Trademarks since this action was commenced, including damaged, defective, and tampered-with products in contravention of Plaintiffs' quality controls.

171.    For the reasons discussed above, the products Defendants sell are not genuine Rainbow Light products, are not subject to, do not abide by, and interfere with Nutranext's quality controls and customer service requirements, and are materially different from genuine Rainbow Light products.

172.    Through their sales of products bearing the Rainbow Light Trademarks, Defendants have misled, and continue to mislead, consumers into believing that they are purchasing genuine Rainbow Light Products when, in fact, they are not.

173.    Defendants' actions infringe on the Rainbow Light Trademarks and diminish their value.

174.    Further, Defendants' disregard of communications from Nutranext and continued sale of non-genuine products despite being informed of their unlawful conduct demonstrates that they are acting intentionally, willfully, and maliciously.

### Defendants Are Tortiously Interfering With Nutranext's Agreements With Its Authorized Resellers

175.    Upon information and belief, Defendants have purchased Rainbow Light Products from Nutranext Authorized Resellers for purposes of reselling them on the Internet.

176.    The Nutranext Rules prohibit Nutranext's Authorized Resellers from selling Rainbow Light Products to third parties who intend to resell the products.

177.    Defendants were informed of this prohibition by at least September 18, 2017. Indeed, the cease and desist letter Nutranext sent Defendants on September 18, 2017 informed Defendants that Nutranext restricts the manner in which Authorized Resellers may sell Rainbow Light Products, and that Authorized Resellers may sell Rainbow Light Products only to end-user customers through authorized channels and are specifically prohibited from selling products to resellers or any person or entity they know or have reason to know intends to resell the products.

178.    Defendants were also informed that by purchasing Rainbow Light Products from an Authorized Reseller for purposes of resale, they were causing a breach of the agreement between Nutranext and its Authorized Reseller and interfering with Nutranext's agreements and business relationships.

179.    Defendants were also advised that if they continued to acquire Rainbow Light Products from Nutranext's Authorized Resellers for purposes of resale, they would be liable for tortiously interfering with Nutranext's contracts and/or business relationships.

180.    Despite being provided this information, Defendants have continued to acquire Rainbow Light Products from Nutranext's Authorized Resellers.  Indeed, during the pendency of

this action, Defendants have increased the number of Rainbow Light listings on their storefront from 3 to up to 20.

181.     Upon information and belief, Defendants willfully and knowingly induced unknown Authorized Resellers to breach their agreements with Nutranext so that they could acquire Rainbow Light Products and resell them.

**Plaintiffs Have Suffered Significant Harm As A Result of Defendants' Conduct**

182.     As set forth above, the unauthorized sale of products bearing the Rainbow Light Trademarks through unauthorized sellers, such as Defendants, has caused significant harm to the Rainbow Light brand.

183.     When a consumer receives a poor-quality, defective, counterfeit, or tampered-with product from Defendants, the consumer associates that negative experience with Nutranext and Rainbow Light.  As such, Defendants' ongoing sale of unauthorized products bearing the Rainbow Light Trademarks harms the Rainbow Light brand.

184.     Plaintiffs have suffered and will continue to suffer significant monetary harm as a result of Defendants' actions including, but not limited to, loss of sales, damage to their intellectual property, and damage to their existing and potential business relations.

185.     Plaintiffs have suffered, and will continue to suffer, irreparable harm as a result of Defendants' actions, including, but not limited to, irreparable harm to their reputation, goodwill, business and customer relationships, intellectual property rights and brand integrity.

186.     Plaintiffs are entitled to injunctive relief because, unless enjoined by this Court, Defendants will continue to unlawfully sell Rainbow Light Products, causing continued irreparable harm to Plaintiffs' reputation, goodwill, relationships, intellectual property and brand integrity.

187.     Defendants' conduct was and is knowing, intentional, willful, malicious, wanton and contrary to law.

188.     Defendants' willful violations of the Rainbow Light Trademarks and continued pattern of misconduct demonstrate intent to harm Plaintiffs.

**COUNT I**

**Trademark Infringement – 15 U.S.C. §§ 1114 and 1125(a)(1)(a)**

189.     Plaintiffs hereby incorporate the allegations contained in the foregoing Paragraphs as if fully set forth herein.

190.     Plaintiffs are the owner and licensee of the Rainbow Light Trademarks.

191.     Plaintiffs have registered the Rainbow Light Trademarks with the United States Patent and Trademark Office.

192.     The Rainbow Light Trademarks are valid and subsisting trademarks in full force and effect.

193.     Defendants, at Figa's direction and control, willfully and knowingly used, and continue to use, the Rainbow Light Trademarks in commerce for purposes of selling Rainbow Light Products on the Internet without Plaintiffs' consent.

194.     The products Defendants sell bearing the Rainbow Light Trademarks are not authorized for sale by Nutranext.

195.     Nutranext has established legitimate, substantial, and non-pretextual quality control procedures over Rainbow Light Products.

196.     Nutranext abides by these quality control procedures and requires all of its Authorized Resellers to abide by these quality controls.

197.     Nutranext's quality controls are material, as they protect consumers and prevent them from receiving poor quality products that could harm them.  When a consumer is deciding whether to purchase a protect bearing the Rainbow Light Trademarks, whether the product is

subject to and abides by Nutranext's quality controls would be relevant to the consumers' purchasing decision.

198.   The products Defendants sell bearing the Rainbow Light Trademarks are not subject to, do not abide by, and interfere with Nutranext's quality controls and customer service requirements.

199.   Because the products Defendants sell bearing the Rainbow Light Trademarks are not subject to, do not abide by, and interfere with Nutranext's quality controls and customer service requirements, the products Defendants sell are materially different from genuine Rainbow Light Products.

200.   Because the products Defendants sell bearing the Rainbow Light Trademarks are not subject to, do not abide by, and interfere with Nutranext's quality controls and customer service requirements, the products Defendants sell are not genuine Rainbow Light Products.

201.   Defendants' unauthorized sale of products bearing the Rainbow Light Trademarks interferes with Nutranext's quality controls and ability to exercise quality control over products bearing the Rainbow Light Trademarks.

202.   Defendants' unauthorized sale of products bearing the Rainbow Light Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are subject to and abide by Nutranext's quality controls when in fact they do not.

203.   Defendants' unauthorized sale of products bearing the Rainbow Light Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are genuine Rainbow Light Products when in fact they are not.

204.     Defendants' unauthorized sale of products bearing the Rainbow Light Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are sponsored, authorized, or otherwise connected with Plaintiffs when in fact they are not.

205.     Defendants' unauthorized use of the Rainbow Light Trademarks has infringed upon and materially damaged the value of the Rainbow Light Trademarks and caused significant damage to Plaintiffs' business relationships.

206.     As a proximate result of Defendants' actions, Plaintiffs have suffered, and continue to suffer immediate and irreparable harm.  Plaintiffs have also suffered, and continue to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

207.     Plaintiffs are entitled to recover their damages caused by Defendants' infringement of the Rainbow Light Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

208.     Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116 because they have no adequate remedy at law for Defendants' infringement and unless Defendants are permanently enjoined, Plaintiffs will suffer irreparable harm.

209.     Plaintiffs are entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the Rainbow Light Trademarks.

210.     Wherefore, Plaintiffs respectfully pray for relief and judgment against Defendants as follows:

a. That the Court find for Plaintiffs against Defendants on the claim for federal trademark infringement in violation of 15 U.S.C. §§ 1114 and 1125(a)(1)(a) in an amount to be determined at trial, including but not limited to, compensatory damages, statutory damages, treble damages, and pre-judgment and post-judgment interest, as permitted by law;

b. That the Court enter an award of attorneys' fees, costs, and expenses;

c. That the Court find Defendants jointly and severally liable for the monetary damages awarded on Count I;

d. That Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all those in active concert and participation with them (the "Enjoined Parties") be permanently enjoined and restrained from:

    i. advertising or selling, via the Internet or otherwise, any and all Rainbow Light Products as well as any products bearing any of the Rainbow Light Trademarks;

    ii. using any of the Rainbow Light Trademarks in any manner, including advertising on the Internet;

    iii. importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all Rainbow Light Products as well as any products bearing any of the Rainbow Light Trademarks; and

    iv. disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the Rainbow Light Trademarks including invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks;

e. That the Enjoined Parties be ordered to take all action to remove from the Enjoined Parties' websites or storefronts any reference to any Rainbow Light Products or any of the Rainbow Light Trademarks;

f. That the Enjoined Parties be ordered to take all action to remove from the Internet any of the Rainbow Light Trademarks which associate Rainbow Light Products or the Rainbow Light Trademarks with the Enjoined Parties or the Enjoined Parties' websites or storefronts, including, but not limited to, requesting Internet search engines (such as Google, Yahoo!, and Bing) to remove such any such associations;

g. That the Enjoined Parties be ordered to take all action within their power or authority to remove unauthorized Rainbow Light Trademarks from the Internet; and

h. For an order granting any other and further relief as the Court deems just.

## <u>COUNT II</u>

### <u>Trademark Counterfeiting – 15 U.S.C. § 1114</u>

211.    Plaintiffs hereby incorporate the allegations contained in the foregoing Paragraphs as if fully set forth herein.

212.    Plaintiffs are the owner and licensee of the Rainbow Light Trademarks.

213.    Plaintiffs have registered the Rainbow Light Trademarks with the United States Patent and Trademark Office.

214.    The Rainbow Light Trademarks are valid and subsisting trademarks in full force and effect.

215.    Defendants willfully and knowingly used in commerce, and continue to use, counterfeit reproductions of the Rainbow Light Trademarks that are identical with, or substantially indistinguishable from, the Rainbow Light Trademarks on goods covered by Plaintiffs' federal trademark registrations.

216.    Defendants have intentionally used these spurious designations, knowing that they are counterfeit, in connection with the advertisement, promotion, sale, offering for sale, and distribution of goods.

217.    Defendants' use of the Rainbow Light Trademarks to advertise, promote, offer for sale, distribute, and sell products bearing counterfeit trademarks was at all times and is currently without Plaintiffs' authorization, license, or consent.

218.    Defendants' unauthorized use of the Rainbow Light Trademarks on goods bearing counterfeit trademarks in connection with their advertisement, promotion, sale, offering for sale, and distribution of goods on the Internet constitutes use of the Rainbow Light Trademarks in commerce.

219.    Defendants' unauthorized use of the Rainbow Light Trademarks is likely to: (a) cause confusion, mistake, and deception; (b) cause the public to incorrectly believe that Defendants' goods are the same as Rainbow Light Products and/or that the products sold by Defendants are affiliated with, connected to, associated with, or in some way related to Plaintiffs;

(c) result in Defendants benefiting from Plaintiffs' advertising and promotion; and (d) result in Defendants unfairly profiting from Plaintiffs' reputation and trademarks, all to the substantial and irreparable injury of the public, Plaintiffs, the Rainbow Light Trademarks, and the substantial goodwill they represent.

220.    Defendants' acts constitute willful trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

221.    By reason of the foregoing, Defendants are liable to Plaintiffs for: (a) statutory damages of up to $2,000,000 for each mark counterfeited as provided by 15 U.S.C. § 1117(c) of the Lanham Act, or, at Plaintiffs' election, an amount representing three times Plaintiffs' damages and/or Defendants' illicit profits; and (b) reasonable attorneys' fees, investigative fees, and pre-judgment interest pursuant to 15 U.S.C. § 1117(b).

222.    Plaintiffs are also entitled to temporary, preliminary, and permanent injunctive relief, including an order permitting the seizure of all "goods and counterfeit marks . . . the means of making such [counterfeit] marks, and records documenting the manufacture, sale, or receipt of things involved in such [counterfeiting] violation[s]" pursuant to 15 U.S.C. § 1116(d).

223.    As a proximate result of Defendants' actions, Plaintiffs have suffered, and continue to suffer immediate and irreparable harm.  Plaintiffs have also suffered, and continue to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

224.    Wherefore, Plaintiffs respectfully pray for relief and judgment against Defendants as follows:

      a.  That the Court find for Plaintiffs against Defendants on the claim for federal trademark counterfeiting in violation of 15 U.S.C. § 1114 in an amount to be

determined at trial, including but not limited to, compensatory damages, statutory damages, treble damages, and pre-judgment and post-judgment interest, as permitted by law;

b. That the court award statutory damages of up to $2,000,000 for each mark counterfeited as provided by 15 U.S.C. § 1117(c) or, at Plaintiffs' election, an amount representing three (3) times Plaintiffs' damages and/or Defendants' illicit profits;

c. That the Court enter an award of attorneys' fees, investigative fees, pre-judgment interest, costs, and expenses pursuant to 15 U.S.C. § 1117(b).

d. That the Court find Defendants jointly and severally liable for the monetary damages awarded on Count II;

e. That Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all those in active concert and participation with them (the "Enjoined Parties") be permanently enjoined and restrained from:

    i. advertising or selling, via the Internet or otherwise, any and all Rainbow Light Products as well as any products bearing any of the Rainbow Light Trademarks or counterfeit reproductions of the Rainbow Light Trademarks;

    ii. using any of the Rainbow Light Trademarks in any manner, including advertising on the Internet;

      iii. importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all Rainbow Light Products as well as any products bearing any of the Rainbow Light Trademarks or counterfeit reproductions of the Rainbow Light Trademarks; and

      iv. disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the Rainbow Light Trademarks or counterfeit reproductions of the Rainbow Light Trademarks including invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks;

f.   That the Enjoined Parties be ordered to take all action to remove from the Enjoined Parties' websites or storefronts any reference to any Rainbow Light Products or any of the Rainbow Light Trademarks;

g.   That the Enjoined Parties be ordered to take all action to remove from the Internet any of the Rainbow Light Trademarks which associate Rainbow Light Products or the Rainbow Light Trademarks with the Enjoined Parties or the Enjoined Parties' websites or storefronts, including, but not limited to, requesting Internet search engines (such as Google, Yahoo!, and Bing) to remove such any such associations;

h.  That the Enjoined Parties be ordered to take all action within their power or authority to remove unauthorized Rainbow Light Trademarks and counterfeit reproductions of the Rainbow Light Trademarks from the Internet;

i.  That the Court enter an order permitting the seizure of all "goods and counterfeit marks" involved in Defendants' use of counterfeit reproductions of the Rainbow Light Trademarks as well as "the means of making such [counterfeit] marks, and records documenting the manufacture, sale, or receipt of things involved in such [counterfeiting] violation[s]," pursuant to 15 U.S.C. § 1116(d); and

j.  For an order granting any other and further relief as the Court deems just.

## COUNT III

### False Advertising – 15 U.S.C. § 1125(a)(1)(b)

225.  Plaintiffs hereby incorporate the allegations contained in the foregoing Paragraphs as if fully set forth herein.

226.  Plaintiffs are the owner and licensee of the Rainbow Light Trademarks.

227.  Plaintiffs have registered the Rainbow Light Trademarks with the United States Patent and Trademark Office.

228.  The Rainbow Light Trademarks are valid and subsisting trademarks in full force and effect.

229.  Defendants, at Figa's direction and control, willfully and knowingly used, and continue to use, the Rainbow Light Trademarks in interstate commerce, including through their product listings on Amazon, for the purpose of advertising, promoting, and selling products bearing the Rainbow Light Trademarks without the consent of Nutranext.

45

230.     Defendants' advertisements and promotions of their products unlawfully using the Rainbow Light Trademarks have been disseminated to the relevant purchasing public.

231.     The products Defendants advertise, promote, and sell bearing the Rainbow Light Trademarks are not authorized for sale by Nutranext.

232.     Nutranext has established legitimate, substantial, and non-pretextual quality control procedures over Rainbow Light Products.

233.     Nutranext abides by these quality control procedures and requires all of its Authorized Resellers to abide by these quality controls.

234.     Nutranext's quality controls are material, as they protect consumers and prevent them from receiving poor quality products that could harm them.  When a consumer is deciding whether to purchase a protect bearing the Rainbow Light Trademarks, whether the product is subject to and abides by Nutranext's quality controls would be relevant to the consumers' purchasing decision.

235.     The products Defendants advertise, promote, and sell bearing the Rainbow Light Trademarks are not subject to, do not abide by, and interfere with Nutranext's quality controls and customer service requirements.

236.     Because the products Defendants advertise, promote, and sell bearing the Rainbow Light Trademarks are not subject to, do not abide by, and interfere with Nutranext's quality controls and customer service requirements, the products Defendants sell are materially different from genuine Rainbow Light Products.

237.     Because the products Defendants advertise, promote, and sell bearing the Rainbow Light Trademarks are not subject to, do not abide by, and interfere with Nutranext's quality

controls and customer service requirements, the products Defendants sell are not genuine Rainbow Light Products.

238.    Defendants' unauthorized advertisement, promotion, and sale of products bearing the Rainbow Light Trademarks interferes with Nutranext's quality controls and ability to exercise quality control over products bearing the Rainbow Light Trademarks.

239.    Defendants' use of the Rainbow Light Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the Rainbow Light Trademarks misrepresents the nature, characteristics, qualities, and origin of Defendants' products because it suggests that the products are subject to and abide by Nutranext's quality control requirements when in fact they do not.

240.    Defendants' use of the Rainbow Light Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the Rainbow Light Trademarks misrepresents the nature, characteristics, qualities, and origin of Defendants' products because it suggests that the products come with customer service benefits that accompany genuine Rainbow Light Products when in fact they do not.

241.    Defendants' use of the Rainbow Light Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the Rainbow Light Trademarks is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are genuine and authentic Rainbow Light Products when in fact they are not.

242.    Defendants' use of the Rainbow Light Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the Rainbow Light Trademarks is likely to cause confusion, cause mistake, or deceive because it suggests that the products

Defendants offer for sale are sponsored, authorized, or otherwise connected with Plaintiffs when in fact they are not.

243.    Defendants' unauthorized and deceptive use of the Rainbow Light Trademarks is material and likely to influence customers to purchase the products they sell, as consumers are likely to believe that products Defendants advertise using the Rainbow Light Trademarks are genuine Rainbow Light Products that are subject to and abide by Nutranext's quality controls requirement and come with the benefits associated with authentic Rainbow Light Products when in fact they do not.

244.    Defendants' unauthorized use of the Rainbow Light Trademarks in advertising, and otherwise, infringes on the Rainbow Light Trademarks.

245.    As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, damage to their business, goodwill, reputation, and profits in an amount to be proven at trial.

246.    Plaintiffs are entitled to recover their damages caused by Defendants' infringement of the Rainbow Light Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

247.    Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116 because they have no adequate remedy at law for Defendants' infringement and unless Defendants are permanently enjoined, Plaintiffs will suffer irreparable harm.

248.    Plaintiffs are entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the Rainbow Light Trademarks.

249.     Wherefore, Plaintiffs respectfully pray for relief and judgment against Defendants as follows:

a.   That the Court find for Plaintiffs against Defendants on the claim for federal false advertising in violation of 15 U.S.C. § 1125(a)(1)(b) in an amount to be determined at trial, including but not limited to, compensatory damages, statutory damages, treble damages, and pre-judgment and post-judgment interest, as permitted by law;

b.   That the Court enter an award of attorneys' fees, costs, and expenses;

c.   That the Court find Defendants jointly and severally liable for the monetary damages awarded on Count III;

d.   That the Enjoined Parties be permanently enjoined and restrained from:

   i.   advertising or selling, via the Internet or otherwise, any and all Rainbow Light Products as well as any products bearing any of the Rainbow Light Trademarks;

   ii.  using any of the Rainbow Light Trademarks in any manner, including advertising on the Internet;

   iii. importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all Rainbow Light Products as well as any products bearing any of the Rainbow Light Trademarks; and

   iv.  disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the Rainbow Light Trademarks including invoices,

correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks;

e.   That the Enjoined Parties be ordered to take all action to remove from the Enjoined Parties' websites or storefronts any reference to any Rainbow Light Products or any of the Rainbow Light Trademarks;

f.   That the Enjoined Parties be ordered to take all action to remove from the Internet any of the Rainbow Light Trademarks which associate Rainbow Light Products or the Rainbow Light Trademarks with the Enjoined Parties or the Enjoined Parties' websites or storefronts, including, but not limited to, requesting Internet search engines (such as Google, Yahoo!, and Bing) to remove such any such associations;

g.   That the Enjoined Parties be ordered to take all action within their power or authority to remove unauthorized Rainbow Light Trademarks from the Internet; and

h.   For an order granting any other and further relief as the Court deems just.

## COUNT IV

### Unfair Competition – 15 U.S.C. § 1125(a)

250.   Plaintiffs hereby incorporate the allegations contained in the foregoing Paragraphs as if fully set forth herein.

251.   Plaintiffs are the owner and licensee of the Rainbow Light Trademarks.

252.   Plaintiffs have registered the Rainbow Light Trademarks with the United States Patent and Trademark Office.

253.     The Rainbow Light Trademarks are valid and subsisting trademarks in full force and effect.

254.     Defendants, at Figa's direction and control, have willfully and knowingly used, and continue to use, the Rainbow Light Trademarks in commerce for purposes of selling and advertising products bearing the Rainbow Light trademarks without Plaintiffs' consent.

255.     The products Defendants advertise and sell bearing the Rainbow Light Trademarks are not authorized for sale by Nutranext.

256.     Nutranext has established legitimate, substantial, and non-pretextual quality control procedures over Rainbow Light Products.

257.     Nutranext abides by these quality control procedures and requires all of its Authorized Resellers to abide by these quality controls.

258.     Nutranext's quality controls are material, as they protect consumers and prevent them from receiving poor quality products that could harm them.  When a consumer is deciding whether to purchase a protect bearing the Rainbow Light Trademarks, whether the product is subject to and abides by Nutranext's quality controls would be relevant to the consumers' purchasing decision.

259.     The products Defendants advertise and sell bearing the Rainbow Light Trademarks are not subject to, do not abide by, and interfere with Nutranext's quality controls and customer service requirements.

260.     Because the products Defendants advertise and sell bearing the Rainbow Light Trademarks are not subject to, do not abide by, and interfere with Nutranext's quality controls and customer service requirements, the products Defendants sell are materially different from genuine Rainbow Light Products.

261.    Because the products Defendants advertise and sell bearing the Rainbow Light Trademarks are not subject to, do not abide by, and interfere with Nutranext's quality controls and customer service requirements, the products Defendants sell are not genuine Rainbow Light Products.

262.    Defendants' unauthorized advertisement and sale of products bearing the Rainbow Light Trademarks interferes with Nutranext's quality controls and ability to exercise quality control over products bearing the Rainbow Light Trademarks.

263.    Defendants' use of the Rainbow Light Trademarks in connection with their unauthorized sale and advertising of products bearing the Rainbow Light Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are subject to and abide by Nutranext's quality control program when in fact they do not.

264.    Defendants' use of the Rainbow Light Trademarks in connection with their unauthorized sale and advertising of products bearing the Rainbow Light Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are genuine Rainbow Light Products when in fact they are not.

265.    Defendants' use of the Rainbow Light Trademarks in connection with their unauthorized sale and advertising of products bearing the Rainbow Light Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are sponsored by, authorized by, approved by, or otherwise connected with Plaintiffs when in fact they are not.

266.     Defendants' unauthorized sale of products bearing Rainbow Light Trademarks and unauthorized use of Rainbow Light Trademarks in advertising infringes on the Rainbow Light Trademarks.

267.     Defendants' unauthorized sale of products bearing Rainbow Light Trademarks and unauthorized use of Rainbow Light Trademarks in advertising has materially damaged the value of the Rainbow Light Trademarks and has caused significant damages to Plaintiffs' business relations.

268.     As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, damage to their business, goodwill, reputation, and profits in an amount to be proven at trial

269.     Plaintiffs are entitled to recover their damages caused by Defendants' infringement of the Rainbow Light Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

270.     Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116 because they have no adequate remedy at law for Defendants' infringement and unless Defendants are permanently enjoined, Plaintiffs will suffer irreparable harm.

271.     Plaintiffs are entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the Rainbow Light Trademarks.

272.     Wherefore, Plaintiffs respectfully pray for relief and judgment against Defendants as follows:

      a.   That the Court find for Plaintiffs against Defendants on the claim for federal unfair competition in violation of 15 U.S.C. § 1125(a) in an amount to be

determined at trial, including but not limited to, compensatory damages, statutory damages, treble damages, and pre-judgment and post-judgment interest, as permitted by law;

b.   That the Court enter an award of attorneys' fees, costs, and expenses;

c.   That the Court find Defendants jointly and severally liable for the monetary damages awarded on Count IV;

d.   That the Enjoined Parties be permanently enjoined and restrained from:

 i.   advertising or selling, via the Internet or otherwise, any and all Rainbow Light Products as well as any products bearing any of the Rainbow Light Trademarks;

 ii.   using any of the Rainbow Light Trademarks in any manner, including advertising on the Internet;

 iii.   importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all Rainbow Light Products as well as any products bearing any of the Rainbow Light Trademarks; and

 iv.   disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the Rainbow Light Trademarks including invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks;

e.  That the Enjoined Parties be ordered to take all action to remove from the Enjoined Parties' websites or storefronts any reference to any Rainbow Light Products or any of the Rainbow Light Trademarks;

f.  That the Enjoined Parties be ordered to take all action to remove from the Internet any of the Rainbow Light Trademarks which associate Rainbow Light Products or the Rainbow Light Trademarks with the Enjoined Parties or the Enjoined Parties' websites or storefronts, including, but not limited to, requesting Internet search engines (such as Google, Yahoo!, and Bing) to remove such any such associations;

g.  That the Enjoined Parties be ordered to take all action within their power or authority to remove unauthorized Rainbow Light Trademarks from the Internet; and

h.  For an order granting any other and further relief as the Court deems just.

## **COUNT V**

### **Trademark Dilution – 15 U.S.C. § 1125(c)**

273.   Plaintiffs hereby incorporate the allegations contained in the foregoing Paragraphs as if fully set forth herein.

274.   Plaintiffs are the owner and licensee of the Rainbow Light Trademarks.

275.   Plaintiffs have registered the Rainbow Light Trademarks with the United States Patent and Trademark Office.

276.   The Rainbow Light Trademarks are valid and subsisting trademarks in full force and effect.

277.   Rainbow Light was founded in 1981.  For over 30 years, it has been recognized by consumers as the source for natural, food-based supplements that make a difference in the their

health and well-being, while promoting sustainable practices for planetary health and contributing to the fight against global malnutrition.

278.    Rainbow Light filed the RAINBOW LIGHT® trademark on March 17, 1993, and it was registered on August 31, 1993.  Nutranext has actively, continuously, and exclusively used the RAINBOW LIGHT® trademark since that time.

279.    Plaintiffs have expended substantial time, money, and resources advertising and promoting Rainbow Light Products with the RAINBOW LIGHT® trademark.

280.    Nutranext markets, advertises, and sells products using the RAINBOW LIGHT® trademark throughout the United States.

281.    Nutranext has established legitimate, substantial, and non-pretextual quality control procedures over Rainbow Light Products.

282.    Nutranext abides by these quality control procedures and requires all of its Authorized Resellers to abide by these quality controls.

283.    Nutranext's quality controls are material, as they protect consumers and prevent them from receiving poor quality products that could harm them.  When a consumer is deciding whether to purchase a protect bearing the Rainbow Light Trademarks, whether the product is subject to and abides by Nutranext's quality controls would be relevant to the consumers' purchasing decision.

284.    Consumers recognize and associate the RAINBOW LIGHT® trademark with quality.

285.    Consumers recognize the Rainbow Light Trademarks as being associated with healthy, nutritional, food-based supplements grounded in the power of nature.

286.    Consumers also recognize Rainbow Light as the pioneer of food-based nutritional supplements and one of the first companies to provide a food-grown product.

287.    Consumers identify Rainbow Light as offering fresh new choices of effective nutritional products for every age, life stage, and health concern.

288.    Rainbow Light is known for using certified organic, non-GMO spirulina as the primary food base in its supplements, which is exceptionally easy to digest.

289.    The Rainbow Light name is recognized by consumers for its innovative formulas that include clinically researched ingredients, which are formulated based on the latest nutritional science to ensure appropriate potencies and optimal combinations for absorption, utility and effectiveness.

290.    Because of the quality and effectiveness of Rainbow Light Products and the longevity of the use of the Rainbow Light name and RAINBOW LIGHT® trademark, consumers trust the Rainbow Light name and Rainbow Light Products.

291.    In 2014, Rainbow Light earned the reputation as the #1 Most Trusted Natural Vitamin Brand, according to a study by Wiest & Co.

292.    The RAINBOW LIGHT® Trademark is widely recognized by the general public of the United States and Nutranext is widely recognized as the source of products bearing the Rainbow Light Trademarks.

293.    The RAINBOW LIGHT® trademark is the means by which Rainbow Light Products are distinguished from others in the marketplace.

294.    The RAINBOW LIGHT® trademark is inherently distinctive, and as a result of Plaintiffs' long, continuous, and exclusive use of the RAINBOW LIGHT® trademark, it has

acquired a secondary meaning associated by purchasers and the public with Rainbow Light Products.

295.    For these reasons, since at least 2014, the RAINBOW LIGHT® trademark has been famous, distinctive, and widely recognized by the consuming public.

296.    In 2016 or 2017, after the RAINBOW LIGHT® trademark became famous, Defendants, at Figa's direction and control, began willfully and knowingly using, and continue to use, the RAINBOW LIGHT® trademark in commerce for purposes of selling products bearing the RAINBOW LIGHT® trademark on the Internet without Nutranext's consent.

297.    Defendants' willful use of the RAINBOW LIGHT® trademark in connection with the unauthorized and illegal sale of its products dilutes the RAINBOW LIGHT® trademark because the products Defendants sell are not subject to, and do not abide by, Nutranext's quality controls and interfere with Nutranext's ability to exercise control over the quality of its products.

298.    Consumers who receive poor quality products from Defendants associate that lack of quality with Plaintiffs and the RAINBOW LIGHT® trademark.

299.    Consumers who receive poor quality products submit negative online reviews disparaging Plaintiffs and the RAINBOW LIGHT® trademark.  These negative reviews influence other consumers and cause them to become less likely to purchase Rainbow Light Products and trust products bearing the RAINBOW LIGHT® trademark.

300.    As a result, Defendants' unauthorized and willful use of the RAINBOW LIGHT® trademark has tarnished and diluted the RAINBOW LIGHT® trademark.

301.    As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, damage to their business, goodwill, reputation, and profits in an amount to be proven at trial.

302.     Plaintiffs are entitled to recover their damages caused by Defendants' infringement of the Rainbow Light Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

303.     Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116 because they have no adequate remedy at law for Defendants' infringement and unless Defendants are permanently enjoined, Plaintiffs will suffer irreparable harm.

304.     Plaintiffs are entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the Rainbow Light Trademarks.

305.     Wherefore, Plaintiffs respectfully pray for relief and judgment against Defendants as follows:

    a.  That the Court find for Plaintiffs against Defendants on the claim for federal trademark dilution in violation of 15 U.S.C. § 1125(c) in an amount to be determined at trial, including but not limited to, compensatory damages, statutory damages, treble damages, and pre-judgment and post-judgment interest, as permitted by law;

    b.  That the Court enter an award of attorneys' fees, costs, and expenses;

    c.  That the Court find Defendants jointly and severally liable for the monetary damages awarded on Count V;

    d.  That the Enjoined Parties be permanently enjoined and restrained from:

        i.  advertising or selling, via the Internet or otherwise, any and all Rainbow Light Products as well as any products bearing any of the Rainbow Light Trademarks;

    ii.  using any of the Rainbow Light Trademarks in any manner, including advertising on the Internet;

   iii.  importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all Rainbow Light Products as well as any products bearing any of the Rainbow Light Trademarks; and

   iv.  disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the Rainbow Light Trademarks including invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks;

e.  That the Enjoined Parties be ordered to take all action to remove from the Enjoined Parties' websites or storefronts any reference to any Rainbow Light Products or any of the Rainbow Light Trademarks;

f.  That the Enjoined Parties be ordered to take all action to remove from the Internet any of the Rainbow Light Trademarks which associate Rainbow Light Products or the Rainbow Light Trademarks with the Enjoined Parties or the Enjoined Parties' websites or storefronts, including, but not limited to, requesting Internet search engines (such as Google, Yahoo!, and Bing) to remove such any such associations;

g.   That the Enjoined Parties be ordered to take all action within their power or authority to remove unauthorized Rainbow Light Trademarks from the Internet; and

h.   For an order granting any other and further relief as the Court deems just.

## COUNT VI

### Common Law Trademark Infringement

306.   Plaintiffs hereby incorporate the allegations contained in the foregoing Paragraphs as if fully set forth herein.

307.   Plaintiffs are the owner and licensee of the Rainbow Light Trademarks.

308.   Plaintiffs have registered the Rainbow Light Trademarks with the United States Patent and Trademark Office.

309.   The Rainbow Light Trademarks are valid and subsisting trademarks in full force and effect.

310.   The Rainbow Light Trademarks are distinctive and widely recognized by the consuming public.   Rainbow Light Products are sold and purchased through Nutranext's Authorized Resellers throughout the United States, including Florida.

311.   Plaintiffs are widely recognized as the designated source of goods bearing the Rainbow Light Trademarks.

312.   Defendants, at Figa's direction and control, willfully and knowingly used, and continue to use, the Rainbow Light Trademarks in interstate commerce for purposes of selling Rainbow Light Products on the Internet without Plaintiffs' consent.

313.   The products Defendants sell bearing the Rainbow Light Trademarks are not authorized for sale by Nutranext.

314.    Nutranext has established legitimate, substantial, and non-pretextual quality control procedures over Rainbow Light Products.

315.    Nutranext abides by these quality control procedures and requires all of its Authorized Resellers to abide by these quality controls.

316.    Nutranext's quality controls are material, as they protect consumers and prevent them from receiving poor quality products that could harm them.  When a consumer is deciding whether to purchase a protect bearing the Rainbow Light Trademarks, whether the product is subject to and abides by Nutranext's quality controls would be relevant to the consumers' purchasing decision.

317.    The products Defendants sell bearing the Rainbow Light Trademarks are not subject to, do not abide by, and interfere with Nutranext's quality controls and customer service requirements.

318.    Because the products Defendants sell bearing the Rainbow Light Trademarks are not subject to, do not abide by, and interfere with Nutranext's quality controls and customer service requirements, the products Defendants sell are materially different from genuine Rainbow Light Products.

319.    Because the products Defendants sell bearing the Rainbow Light Trademarks are not subject to, do not abide by, and interfere with Nutranext's quality controls and customer service requirements, the products Defendants sell are not genuine Rainbow Light Products.

320.    Defendants' unauthorized sale of products bearing the Rainbow Light Trademarks interferes with Nutranext's quality controls and ability to exercise quality control over products bearing the Rainbow Light Trademarks.

321.    Defendants' unauthorized sale of products bearing the Rainbow Light Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are subject to and abide by Nutranext's quality control program when in fact they do not.

322.    Defendants' unauthorized sale of products bearing the Rainbow Light Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are genuine Rainbow Light Products when in fact they are not.

323.    Defendants' unauthorized sale of products bearing the Rainbow Light Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are sponsored, authorized, or otherwise connected with Plaintiffs when in fact they are not.

324.    Defendants' knowing and willful use of the Rainbow Light Trademarks in connection with the unauthorized and illegal sale of products bearing the Rainbow Light Trademarks without Nutranext's consent infringes on the Rainbow Light Trademarks and is contrary to honest practice in industrial and commercial matters.

325.    Defendants' unlawful actions and unauthorized use of the Rainbow Light Trademarks has materially damaged the value of the Rainbow Light Trademarks, caused significant damage to Plaintiffs' business relations, and infringed on the Rainbow Light Trademarks.

326.    As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, irreparable harm, as well as damage to their business, goodwill, reputation, and profits in an amount to be proven at trial.

327.    Plaintiffs are entitled to punitive damages because Defendants' misconduct was intentional and/or grossly negligent.

328.    Wherefore, Plaintiffs respectfully pray for relief and judgment against Defendants as follows:

        a.  That the Court find for Plaintiffs against Defendants on the claim for common law trademark infringement in an amount to be determined at trial, including but not limited to, compensatory damages, punitive damages, and pre-judgment and post-judgment interest, as permitted by law;

        b.  That the Court enter an award of attorneys' fees, costs, and expenses;

        c.  That the Court find Defendants jointly and severally liable for the monetary damages awarded on Count VI;

        d.  That the Enjoined Parties be permanently enjoined and restrained from:

                i.  advertising or selling, via the Internet or otherwise, any and all Rainbow Light Products as well as any products bearing any of the Rainbow Light Trademarks;

                ii.  using any of the Rainbow Light Trademarks in any manner, including advertising on the Internet;

                iii.  importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all Rainbow Light Products as well as any products bearing any of the Rainbow Light Trademarks; and

                iv.  disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which

contain the Rainbow Light Trademarks including invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks;

e. That the Enjoined Parties be ordered to take all action to remove from the Enjoined Parties' websites or storefronts any reference to any Rainbow Light Products or any of the Rainbow Light Trademarks;

f. That the Enjoined Parties be ordered to take all action to remove from the Internet any of the Rainbow Light Trademarks which associate Rainbow Light Products or the Rainbow Light Trademarks with the Enjoined Parties or the Enjoined Parties' websites or storefronts, including, but not limited to, requesting Internet search engines (such as Google, Yahoo!, and Bing) to remove such any such associations;

g. That the Enjoined Parties be ordered to take all action within their power or authority to remove unauthorized Rainbow Light Trademarks from the Internet; and

h. For an order granting any other and further relief as the Court deems just.

<u>**COUNT VII**</u>

**Violation of the Florida Unfair and Deceptive Trade Practices Act –
Fla. Stat. § 501.201, *et seq.***

329.    Plaintiffs hereby incorporate the allegations contained in the foregoing Paragraphs as if fully set forth herein.

330.    Plaintiffs are the owner and licensee of the Rainbow Light Trademarks.

331.    Plaintiffs have registered the Rainbow Light Trademarks with the United States Patent and Trademark Office.

332.    The Rainbow Light Trademarks are valid and subsisting trademarks in full force and effect.

333.    Defendants, at Figa's direction and control, willfully and knowingly used, and continue to use, the Rainbow Light Trademarks in interstate commerce, including through their product listings on Amazon, for the purpose of advertising and selling products bearing the Rainbow Light Trademarks.

334.    Defendants' advertisements of products unlawfully using the Rainbow Light Trademarks have been disseminated to the relevant purchasing public.

335.    The products Defendants advertise and sell bearing the Rainbow Light Trademarks are not authorized for sale by Nutranext.

336.    Nutranext has established legitimate, substantial, and non-pretextual quality control procedures over Rainbow Light Products.

337.    Nutranext abides by these quality control procedures and requires all of its Authorized Resellers to abide by these quality controls.

338.    Nutranext's quality controls are material, as they protect consumers and prevent them from receiving poor quality products that could harm them.  When a consumer is deciding whether to purchase a protect bearing the Rainbow Light Trademarks, whether the product is subject to and abides by Nutranext's quality controls would be relevant to the consumers' purchasing decision.

339.    The products Defendants advertise and sell bearing the Rainbow Light Trademarks are not subject to, do not abide by, and interfere with Nutranext's quality controls and customer service requirements.

340.    Because the products Defendants advertise and sell bearing the Rainbow Light Trademarks are not subject to, do not abide by, and interfere with Nutranext's quality controls and customer service requirements, the products Defendants sell are materially different from genuine Rainbow Light Products.

341.    Because the products Defendants advertise and sell bearing the Rainbow Light Trademarks are not subject to, do not abide by, and interfere with Nutranext's quality controls and customer service requirements, the products Defendants sell are not genuine Rainbow Light Products.

342.    Defendants' unauthorized sale of products bearing the Rainbow Light Trademarks interferes with Nutranext's quality controls and ability to exercise quality control over products bearing the Rainbow Light Trademarks.

343.    Defendants' use of the Rainbow Light Trademarks in connection with the unauthorized sale and advertising of products is likely to cause confusion, cause mistake, or deceive an appreciable number of ordinarily prudent purchasers as to the affiliation, connection, association, sponsorship or approval of Rainbow Light Products because it suggests that the products Defendants offer for sale originate from, or are sponsored, authorized, or otherwise connected with Plaintiffs.

344.    Defendants' unauthorized sale of products bearing the Rainbow Light Trademarks, and unauthorized use of the Rainbow Light Trademarks in advertising constitute unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the

conduct of trade or commerce in violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Statute § 501.201, et seq.

345.    Defendants' unauthorized sale of products bearing the Rainbow Light Trademarks, and unauthorized use of the Rainbow Light Trademarks in advertising materially damages the value of the Rainbow Light Trademarks and causes significant damages to Plaintiffs' business relations.

346.    As a result of Defendants' unlawful actions, Plaintiffs have suffered, and continue to suffer immediate and irreparable harm.  Plaintiffs have also suffered, and continue to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

347.    Pursuant to Fla. Stat. § 501.211(1), Plaintiffs are entitled to injunctive relief enjoining Defendants' conduct.

348.    Pursuant to Fla. Stat. § 501.211(3), Plaintiffs are entitled to an award of attorneys' fees.

349.    Wherefore, Plaintiffs respectfully pray for relief and judgment against Defendants as follows:

a.   That the Court find for Plaintiffs against Defendants on the claim for violations of the Florida Unfair and Deceptive Trade Practices Act in an amount to be determined at trial, including but not limited to, compensatory damages, statutory damages, punitive damages, and pre-judgment and post-judgment interest, as permitted by law;

b.   That the Court enter an award of attorneys' fees, costs, and expenses;

c.  That the Court find Defendants jointly and severally liable for the monetary damages awarded on Count VII;

d.  That the Enjoined Parties be permanently enjoined and restrained from:

   i.   advertising or selling, via the Internet or otherwise, any and all Rainbow Light Products as well as any products bearing any of the Rainbow Light Trademarks;

   ii.  using any of the Rainbow Light Trademarks in any manner, including advertising on the Internet;

   iii. importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all Rainbow Light Products as well as any products bearing any of the Rainbow Light Trademarks; and

   iv.  disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the Rainbow Light Trademarks including invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks;

e.  That the Enjoined Parties be ordered to take all action to remove from the Enjoined Parties' websites or storefronts any reference to any Rainbow Light Products or any of the Rainbow Light Trademarks;

f.  That the Enjoined Parties be ordered to take all action to remove from the Internet any of the Rainbow Light Trademarks which associate Rainbow Light Products or the Rainbow Light Trademarks with the Enjoined Parties or the Enjoined Parties' websites or storefronts, including, but not limited to, requesting Internet search engines (such as Google, Yahoo!, and Bing) to remove such any such associations;

g.  That the Enjoined Parties be ordered to take all action within their power or authority to remove unauthorized Rainbow Light Trademarks from the Internet; and

h.  For an order granting any other and further relief as the Court deems just.

## <u>COUNT VIII</u>

### Tortious Interference with Contract and Business Relations

350.    Plaintiffs hereby incorporate the allegations contained in the foregoing Paragraphs as if fully set forth herein.

351.    Nutranext has entered into agreements with Authorized Resellers to sell Rainbow Light Products.  These agreements and the Nutranext Rules specifically prohibit Nutranext's Authorized Resellers from selling Rainbow Light Products to third parties, such as Defendants, for purposes of resale.

352.    Defendants knew that Nutranext's agreements with its Authorized Resellers prohibit Nutranext's Authorized Resellers from selling Rainbow Light Products to third parties, such as Defendants, for purposes of resale.

353.    Defendants were provided notice of this prohibition by at least September 18, 2017, through the cease and desist letter they received from Nutranext.

354.     Despite having knowledge of this prohibition, Defendants, at Figa's direction and control, knowingly and willfully interfered with the Nutranext Rules and the agreements between Nutranext and its Authorized Resellers by inducing Nutranext's Authorized Resellers to breach their agreements and sell product to Defendants so they could resell them on the Internet.

355.     After being notified of this prohibition, Defendants continued to acquire products from Nutranext's Authorized Resellers for purposes of selling them on the Internet.  Indeed, after being notified of this prohibition, Defendants have increased the number of Rainbow Light listings they offer on the Ocean View Marketing Storefront.

356.     Defendants acted with a wrongful purpose by acquiring Rainbow Light Products from Authorized Resellers for the purpose of reselling those products on the Internet in violation of the Nutranext Rules and Nutranext's agreements with its Authorized Resellers.

357.     Defendants' actions have caused injury to Plaintiffs for which Plaintiffs are entitled to compensatory damages in an amount to be proven at trial.

358.     Plaintiffs are also entitled to punitive damages because their misconduct was intentional and/or grossly negligent.

359.     Wherefore, Plaintiffs respectfully pray for relief and judgment against Defendants as follows:

    a.   That the Court find for Plaintiffs against Defendants on the claim for tortious interference with contract in an amount to be determined at trial, including but not limited to, compensatory damages, punitive damages, and pre-judgment and post-judgment interest, as permitted by law;

    b.   That the Court enter an award of attorneys' fees, costs, and expenses;

c.  That the Court find Defendants jointly and severally liable for the monetary

    damages awarded on Count VIII; and

d.  For an order granting any other and further relief as the Court deems just.


## JURY DEMAND

Plaintiffs demand a trial by jury on all claims and issues so triable.


/s/ Liana R. Hollingsworth
Liana R. Hollingsworth




Dated: February 28, 2018                Respectfully submitted,

                                        /s/ Liana R. Hollingsworth
                                        Daren S. Garcia, Esq.
                                        Florida Bar No. 592609
                                        VORYS, SATER, SEYMOUR AND PEASE LLP
                                        500 Grant Street, Suite 4900
                                        Pittsburgh, Pennsylvania, 15219-2502
                                        Telephone: (412) 904-7700
                                        Facsimile: (412) 904-7817
                                        E-mail: dsgarcia@vorys.com

                                        Liana R. Hollingsworth
                                        Florida Bar No. 0076930
                                        VORYS, SATER, SEYMOUR AND PEASE LLP
                                        200 Public Square, Suite 1400
                                        Cleveland, Ohio 44114
                                        Telephone: (216) 479-6152
                                        Fax: (216) 937-3406
                                        E-mail: lrhollingsworth@vorys.com

                                        *Counsel for Plaintiffs Nutranext, LLC and Rainbow
                                        Light Nutritional Systems, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 28, 2018, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. Notice of this filing will be sent via email to counsel of record by operation of the Court's electronic filing system.

*/s/ Liana R. Hollingsworth*
Liana R. Hollingsworth
